[No. H026670. Sixth Dist. Sept. 20, 2004.]

JOHNN P. KNAPP et al., Plaintiffs and Appellants, v.
JOHN P. DOHERTY et al., Defendants and Respondents.

JOHN P. DOHERTY, Plaintiff and Respondent, v.
MARGARET C. KNAPP et al., Defendants and Appellants.

## COUNSEL

Ed Frey for Defendants and Appellants and for Plaintiffs and Appellants.

Newman, Marcus & Clarenbach and Edward W. Newman for Defendant and Respondent and for Plaintiff and Respondent John P. Doherty.

Houser & Allison, Eric D. Houser and Justin D. Balse, for Defendant and Respondent Ocwen Federal Bank.

Hinshaw & Culbertson and Paul E. Vallone for Defendant and Respondent Dreyfuss, Ryan & Weinfenbach.

## OPINION

**WALSH, J.**—Johnn and Margaret Knapp (Borrowers) lost their home through nonjudicial foreclosure sale in November 2002, nearly one year after the original date noticed for the sale. During the entire time that the foreclosure sale was threatened, they did nothing to cure their default. Afterward, the buyer at the trustee's sale filed an action to evict Borrowers. Two weeks later, Borrowers sued to set aside the trustee's sale, claiming that the sale notice was never served, as required under Civil Code section 2924b, subdivision (b)(2).[1] Their suit was consolidated with the unlawful detainer action.

The lender, trustee, and buyer sought summary judgment in the action to set aside the foreclosure. They effectively negated Borrowers' claim that the sale notice was not served. Borrowers opposed summary judgment by raising other claims—not alleged in their complaint—that the foreclosure proceedings were irregular because of defects in the default notice and sale notice. After affording Borrowers three separate hearings and the opportunity (twice) to submit supplemental briefing, the trial court granted summary judgment. The unlawful detainer case proceeded to trial, and the buyer was awarded possession of the premises.

Borrowers now appeal, asserting various claims of error with respect to the granting of summary judgment against them in their action to set aside the foreclosure sale. They argue that the trial court failed to recognize the existence of triable issues of material fact with respect to claimed irregularities concerning both the default notice and sale notice served and recorded by the trustee. Borrowers claim that, at minimum, the court should have granted their request for a continuance of the summary judgment motion.

After a de novo review of the record, we conclude that the sale notice was served slightly prematurely, but that this minor procedural irregularity was in no way prejudicial to Borrowers. They received adequate notice of the trustee's sale; indeed, they received nine days more than the 20-day notice required under section 2924b, subdivision (b)(2). Accordingly, summary judgment was proper and we affirm the judgment.

### FACTS

In or about September 1988, Borrowers executed a note and deed of trust in favor of Great Western Bank. The deed of trust granted a security interest in residential property located at 156 Las Colinas Drive, Watsonville, California 95076 (Property). The note and deed of trust were thereafter assigned to

---

[1] All statutory references are to the Civil Code unless otherwise indicated.

Ocwen Federal Bank, FSB (Lender) in or about December 1996. Borrowers defaulted on the loan. Lender initiated foreclosure proceedings in September 2001.

On September 5, 2001, Lender—through the trustee, Cameron & Dreyfuss, PLC (Trustee)—recorded a notice of default (Default Notice). The notice indicated that Borrowers had defaulted with respect to monthly payments commencing in July 2000. The Default Notice identified the amount due under the loan as of September 4, 2001, as being $38,011.40.

Lender, through Trustee, recorded on December 12, 2001, a notice of trustee's sale, dated December 6, 2001 (Sale Notice); the notice set the sale date for December 27, 2001. The Sale Notice was posted on the Property on December 6, 2001. It was served on Borrowers by registered or certified mail and by first class mail on November 28, 2001.

Borrowers filed a bankruptcy petition in December 2001. Accordingly, the trustee's sale was postponed 13 times because of the pending bankruptcy.[2] The sale was postponed a 14th time at Lender's request.

The trustee's sale took place on November 14, 2002. The Property was sold to the highest bidder, John P. Doherty (Buyer), who paid $240,100.[3] The trustee's deed—recorded November 25, 2002—included a recital that the Trustee had "complied with all applicable statutory requirements of the State of California," including the recordation and mailing of the Default Notice and Sale Notice.

## PROCEDURAL HISTORY

Buyer filed an action for unlawful detainer against Borrowers on December 16, 2002 (case No. CV145234). He alleged that he acquired title to the Property by a trustee's deed after foreclosure sale. Buyer alleged further that he had served on Borrowers the appropriate statutory three-day notice to quit, that the time had elapsed, and that he demanded possession of the Property.

On December 30, 2002, Borrowers filed suit (complaint) seeking, among other things, to set aside the trustee's sale and to cancel the trustee's deed (case No. CV 145359). The complaint named Buyer, Trustee, and Lender as defendants. Borrowers alleged that the trustee's sale under which Buyer took

---

[2] A continuance of a foreclosure sale after the filing of a bankruptcy petition, and any subsequent continuances of the sale while bankruptcy proceedings are pending, do not violate the automatic stay provisions of the Bankruptcy Code (11 U.S.C. § 362(a)(4)); such postponements merely maintain the status quo. (*In re Peters* (9th Cir. 1996) 101 F.3d 618, 619.)

[3] The unpaid balance on the loan at the time of the trustee's sale was $221,316.21.

title to the Property was invalid because they were not served with the Sale Notice as required by law. Borrowers sought equitable relief—an order setting aside the trustee's sale, an order canceling the trustee's deed, and an accounting of the amount owed by them under the loan from Lender—or, in the alternative, money damages.

On March 8, 2003, the court—pursuant to the parties' stipulation—ordered the two actions consolidated. Trustee filed a motion for summary judgment on the complaint. Buyer and Lender joined in the motion. Lender filed a similar motion for summary judgment. In partial response to the summary judgment motions, Borrowers filed a motion to amend the complaint to allege—as an additional basis for setting aside the trustee's sale—that Lender's Default Notice contained an excessive demand.

The court conducted three hearings in connection with the summary judgment motions. The court's tentative ruling at the time of the first hearing (on July 24, 2003) was to grant summary judgment. After extended argument, the court continued the matter for further hearing to consider a case cited by Borrowers at the hearing, *System Inv. Corp. v. Union Bank* (1971) 21 Cal.App.3d 137 [98 Cal.Rptr. 735] (*System Inv.*). The parties submitted supplemental briefs, and the court issued a supplemental tentative decision reaffirming its prior tentative decision.

After further argument on August 1, 2003, the court continued the case for a third hearing for the parties to brief a new legal argument raised by Borrowers at the hearing concerning the Sale Notice. After supplemental briefing and a third hearing, the court granted the motions for summary judgment. A formal order granting the summary judgment motions was entered on September 2, 2003.

The unlawful detainer case proceeded to trial on August 25, 2003. At its conclusion, the court awarded Buyer possession of the Property and damages of $40 per day from August 20, 2003, to the date of judgment. The court entered judgment in the consolidated cases on September 3, 2003. Thereafter, pursuant to Borrowers' motion, the court stayed the judgment pending appeal, allowing them to retain possession of the Property under certain conditions.

Borrowers filed a notice of appeal on November 3, 2003. The appeal from the judgment was filed timely (Cal. Rules of Court, rule 2(a)(1)) and is a proper subject for appellate review. (Code Civ. Proc., § 437c, subd. (m); see also Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2004) ¶ 10:384, p. 10-122.12 [order granting summary judgment not itself appealable, but appeal lies from judgment entered on such order].)

## DISCUSSION

### I. Standard of Review

■ "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 [107 Cal.Rptr.2d 841, 24 P.3d 493] (*Aguilar*).) A summary judgment motion must demonstrate that "material facts" are undisputed. (Code Civ. Proc., § 437c, subd. (b)(1).) The pleadings determine the issues to be addressed by a summary judgment motion (*Metromedia, Inc. v. City of San Diego* (1980) 26 Cal.3d 848, 885 [164 Cal.Rptr. 510, 610 P.2d 407], revd. on other grounds (1981) 453 U.S. 490 [69 L.Ed.2d 800, 101 S.Ct. 2882]), and the declarations filed in connection with such motion "must be directed to the issues raised by the pleadings." (*Keniston v. American Nat. Ins. Co.* (1973) 31 Cal.App.3d 803, 812 [107 Cal.Rptr. 583].)

■ The moving party "bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar, supra,* 25 Cal.4th at p. 850, fn. omitted.) A defendant moving for summary judgment must " 'show[] that one or more elements of the cause of action . . . cannot be established' by the plaintiff." (*Id.* at p. 853, quoting Code Civ. Proc., § 437c, subd. (*o*)(2).) A defendant meets its burden by presenting affirmative evidence that negates an essential element of plaintiff's claim. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 [100 Cal.Rptr.2d 352, 8 P.3d 1089] (*Guz*).) Alternatively, a defendant meets its burden by submitting evidence "that the plaintiff does not possess, and cannot reasonably obtain, needed evidence" supporting an essential element of its claim. (*Aguilar, supra,* 25 Cal.4th at p. 855.)

■ Since summary judgment motions involve purely questions of law, we review the granting of summary judgment de novo. (*Chavez v. Carpenter* (2001) 91 Cal.App.4th 1433, 1438 [111 Cal.Rptr.2d 534].) Because the facts here "are generally undisputed, only legal issues are presented." (*Angell v. Superior Court* (1999) 73 Cal.App.4th 691, 698 [86 Cal.Rptr.2d 657].)

■ In performing an independent review of the granting of summary judgment, we conduct the same procedure employed by the trial court. We examine: (1) the pleadings to determine the elements of the claim for which the party seeks the relief; (2) the summary judgment motion to determine if movant has established facts justifying judgment in its favor; and (3) the opposition to the motion—assuming movant has met its initial burden—to "decide whether the opposing party has demonstrated the existence of a

triable, material fact issue. [Citation.]" (*Chavez v. Carpenter, supra,* 91 Cal.App.4th at p. 1438; see also *Burroughs v. Precision Airmotive Corp.* (2000) 78 Cal.App.4th 681, 688 [93 Cal.Rptr.2d 124].) We need not defer to the trial court and are not bound by the reasons for the summary judgment ruling; we review the ruling of the trial court, not its rationale. (*Travelers Casualty & Surety Co. v. Superior Court* (1998) 63 Cal.App.4th 1440, 1450 [75 Cal.Rptr.2d 54].)

## II. *Issues on Appeal*

Borrowers challenge the court's granting of the summary judgment motions. Their appeal does not address the unlawful detainer proceeding other than to the extent that the court relied upon the summary judgment order in awarding possession of the Property to Buyer.

Borrowers assert that the trial court erred in granting summary judgment for a variety of reasons. These claims are as follows:

1. There was an irregularity in the Sale Notice: it was mailed to Borrowers prematurely (i.e., on a date that was not at least three months after recordation of the Default Notice).

2. There was a material irregularity in the Default Notice: the motion papers disclosed a discrepancy between the actual date of Borrowers' default and the date identified in the Default Notice.

3. As a matter related to the second claim, the court erred in failing to grant a continuance of the motion to permit Borrowers discovery concerning the alleged discrepancy in the Default Notice.

4. There was a dispute as to whether Buyer was a bona fide purchaser.

5. Buyer purchased the Property for less than one-half of its fair market value.

6. The trial court erred when it concluded that the irregularity in the foreclosure sale procedure must be prejudicial in order to furnish a basis for an action to set aside the sale.

Notably absent is *the only ground for invalidating the foreclosure sale that was alleged in Borrowers' complaint:* Borrowers were not served with the Sale Notice. In the context of our de novo review of the granting of summary judgment, we will first consider the pleaded lack of service of the Sale Notice

and will then address Borrowers' other claims of error concerning the Default Notice, Sale Notice, and denial of the request to continue the hearing on the summary judgment motions.[4]

### III. *Summary Judgment of the Complaint Was Proper*

#### A. *Nonjudicial foreclosure*

Before addressing the issues on appeal, we give a brief overview of the statutory framework governing nonjudicial foreclosures under the Civil Code. Sections 2924 through 2924k "provide a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust." (*Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830 [30 Cal.Rptr.2d 777] (*Moeller*).)

The court in *Moeller* succinctly summarized the procedure leading up to a nonjudicial foreclosure as follows: "Upon default by the trustor [under a deed of trust containing a power of sale], the beneficiary may declare a default and proceed with a nonjudicial foreclosure sale. (Civ. Code, § 2924; [citation].) The foreclosure process is commenced by the recording of a notice of default and election to sell by the trustee. (Civ. Code, § 2924; [citation].) After the notice of default is recorded, the trustee must wait three calendar months before proceeding with the sale. (Civ. Code, § 2924, subd. (b); [citation].) After the 3-month period has elapsed, a notice of sale must be published, posted and mailed 20 days before the sale and recorded 14 days before the sale. (Civ. Code, § 2924f; [citation].)" (*Moeller, supra*, 25 Cal.App.4th at p. 830.)

The statutes provide the trustor with opportunities to prevent foreclosure by curing the default. The trustor may make back payments to reinstate

---

[4] We do not reach the fourth and fifth claims of error. A nonjudicial foreclosure sale is presumed to have been conducted regularly and fairly; one attacking the sale must overcome this common law presumption "by pleading and proving an improper procedure and the resulting prejudice." (4 Miller & Starr, Cal. Real Estate (3d ed. 2000) § 10:211, p. 679.) If the trustee's deed contains a recital that all default and sale notices have been given, the notice requirements are statutorily presumed to have been satisfied, which presumption is conclusive as to a bona fide purchaser at the foreclosure sale. (§ 2924.) Since we conclude, *post*, that Borrowers' claims of error concerning the Default Notice, Sale Notice, and continuance request are without merit, we need not decide whether Buyer was a bona fide purchaser; it is irrelevant in this instance whether the presumption that the trustee's sale was properly conducted was rebuttable or conclusive. Likewise, whether Buyer purchased the Property at the trustee's sale for less than one-half of its fair market value is also immaterial, since we have concluded that there were no prejudicial procedural irregularities with respect to the trustee's sale. (See fn. 12, *post*.) The sixth issue identified in the text—whether the notice defect must be prejudicial to set aside the trustee's sale—is discussed in the context of Borrowers' challenge to service of the Sale Notice, in part III. C. 3., *post*.

the loan up until five business days prior to the date of the sale, including any postponement. (§ 2924c, subds. (a)(1), (e); *Napue v. Gor-Mey West, Inc.* (1985) 175 Cal.App.3d 608, 614 [220 Cal.Rptr. 799].) Additionally, the trustor has an equity of redemption under which the trustor may pay all amounts due at any time prior to the sale to avoid loss of the property. (§§ 2903, 2905.)

■ The manner in which the sale must be conducted is governed by section 2924g. "The property must be sold at public auction to the highest bidder. (Civ. Code, § 2924g, subd. (a); [citation].) [¶] . . . [¶] As a general rule, the purchaser at a nonjudicial foreclosure sale receives title under a trustee's deed free and clear of any right, title or interest of the trustor. [Citation.] A properly conducted nonjudicial foreclosure sale constitutes a final adjudication of the rights of the borrower and lender. [Citation.] Once the trustee's sale is completed, the trustor has no further rights of redemption. [Citation.] [¶] The purchaser at a foreclosure sale takes title by a trustee's deed. If the trustee's deed recites that all statutory notice requirements and procedures required by law for the conduct of the foreclosure have been satisfied, a rebuttable presumption arises that the sale has been conducted regularly and properly; this presumption is conclusive as to a bona fide purchaser. (Civ. Code, § 2924; [citation].)" (*Moeller, supra,* 25 Cal.App.4th at pp. 830–831.)

This comprehensive statutory scheme has three purposes: " '(1) to provide the creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser.' [Citations.]" (*Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 440 [129 Cal.Rptr.2d 436], quoting *Moeller, supra,* 25 Cal.App.4th at p. 830.)

### B. *Actual Service of Sale Notice*

Borrowers' claim in equity to set aside the trustee's sale alleged that the statutory requirements for such sale were not met because the Sale Notice was not served on them. The alternative cause of action for damages—which incorporated all paragraphs of the first cause of action—was likewise based upon the alleged lack of service of the Sale Notice.

Both of the motions established that the Sale Notice was served on Borrowers on November 28, 2001, by certified or registered mail and by first

class mail at the Property.[5] In addition, Lender asserted that, contrary to the allegations in the complaint, Borrowers *actually received* a copy of the Sale Notice; their bankruptcy counsel referred to the Sale Notice and attached it to correspondence dated December 17, 2001 (i.e., 10 days before the originally noticed sale date). On the face of the motion papers, the moving parties/defendants met their initial burden of negating one or more of the essential elements of the causes of action in the complaint. (See *Guz, supra,* 24 Cal.4th at p. 334.) The burden therefore shifted to Borrowers "to show that a triable issue of one or more material facts exists as to that cause of action." (Code Civ. Proc., § 437c, subd. (p)(2).)

The separate statement response filed in opposition to Trustee's motion[6] disputed service of the Sale Notice; Borrowers cited the declaration of Ed Frey (their counsel)—attaching excerpts from Borrowers' depositions—as the basis for this dispute. In addition, Borrowers alleged as a basis for opposing Trustee's motion the additional undisputed material fact that they did not receive the Sale Notice, citing excerpts from their depositions.

On the record before us, Borrowers did not raise a triable issue of material fact in connection with the service of the Sale Notice. (Code Civ. Proc., § 437c, subd. (p)(2); see also *Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 162, 163 [80 Cal.Rptr.2d 66].) Even assuming that Borrowers raised a disputed issue of fact—namely, whether they actually received the Sale Notice—this issue was not a *material* one.

■ In order to be effective, a copy of the notice of trustee's sale—at least 20 days prior to the sale—must be mailed by registered or certified mail, postage prepaid, to the trustor, sent to his or her last known address if different from the address listed on the deed of trust. (§ 2924b, subd. (b)(2).) The trustor need not receive *actual notice* of the trustee's sale so long as notice is provided to the trustor that is in compliance with the statute. (*Strutt v. Ontario Sav. & Loan Assn.* (1970) 11 Cal.App.3d 547, 553–554 [90

---

[5] The affidavit of mailing attached to the Sale Notice reflected a total of *10* mailings to Borrowers, collectively: (a) to 156 Las Colinas Drive, Watsonville, CA 95076-0192 (four mailings [two by first class mail, two by certified or registered mail]); (b) to 156 Las Colinas Drive, Corralitos, CA 95076-0215 (four mailings [two by first class mail, two by certified or registered mail]); and (c) to 168 Madrona Rd., Boulder Creek, CA 95006-9616 (two mailings to Johnn Knapp only [one by first class mail, one by certified or registered mail]). The mailing to the Watsonville address is consistent with the deed of trust executed in favor of Lender's predecessor, which listed the Property as being Borrowers' address.

[6] The record reflects that Borrowers' only written opposition to Lender's summary judgment motion was a one-page pleading incorporating by reference their opposition to Trustee's motion. We assume this to have been the case because the issues involved in Lender's motion were substantially the same as those in Trustee's motion, a fact acknowledged by Borrowers at the second hearing on the motions.

Cal.Rptr. 69].) As one court has held: "We pointedly emphasize, however, that Civil Code sections 2924–2924h, inclusive, do not require actual receipt by a trustor of a notice of default or notice of sale. They simply mandate certain procedural requirements reasonably calculated to inform those who may be affected by a foreclosure sale and who have requested notice in the statutory manner that a default has occurred and a foreclosure sale is imminent." (*Lupertino v. Carbahal* (1973) 35 Cal.App.3d 742, 746–747 [111 Cal.Rptr. 112]; see also *Lancaster Security Inv. Corp. v. Kessler* (1958) 159 Cal.App.2d 649, 652 [324 P.2d 634].)

The motions established that the Sale Notice was properly served in accordance with statutory requirements. Borrowers presented no evidence to rebut this proper service. The response and supporting evidence to the effect that they did not *actually receive* the Sale Notice, at best, raised an issue of *immaterial* fact.[7] Summary judgment—at least on the claims as they were alleged in the complaint—was thus proper.

### C. *Premature Service of Sale Notice*

Borrowers claim that the Sale Notice was defective because it was mailed prematurely: it was mailed on November 28, 2001, a date that was less than three months after recordation of the Default Notice. They urge that summary judgment was improper because of this "irregularity" in the service of the Sale Notice.

Borrowers' argument must be rejected for at least two reasons. First, the claim of defective service of the Sale Notice was not alleged in the complaint. Second, assuming arguendo that it is appropriate to consider the contention, we conclude that: (a) the Sale Notice was served slightly prematurely; (b) all other requirements of service, posting, publication and recordation of the Sale Notice were satisfied; and (c) Borrowers suffered no prejudice from the premature service which could justify invalidating the trustee's sale.

### 1. *Claim outside of allegations of complaint*

The basis for invalidating the foreclosure sale, as alleged in the complaint, was that the sale occurred "without [Trustee] having served a Notice of Sale

---

[7] Because the trustor's *actual notice* of the impending trustee's sale is not required under the foreclosure statutes, we need not resolve whether Borrowers, in fact, received the Sale Notice. We note from the record that there is significant evidence—unrebutted by any declaration from Borrowers—that they *did* receive the Sale Notice: Borrowers' bankruptcy counsel had a copy of the notice in his possession at least 10 days before the date originally noticed for the sale. It suffices that the evidence demonstrated that the trustee mailed the Sale Notice to Borrowers as required under section 2924b, subdivision (b)(2).

of the Property upon Plaintiffs, which notice is required by law." The complaint did *not* allege that the sale was invalid because the service of the Sale Notice was premature; indeed, such a claim would have been inconsistent with the complaint's allegation that the Sale Notice was *not* served.

" 'The purpose of a summary judgment proceeding is to permit a party to show that material factual claims arising from the pleadings need not be tried because they are not in dispute.' [Citation.] 'The function of the pleadings in a motion for summary judgment is to delimit the scope of the issues: the function of the affidavits or declarations is to disclose whether there is any triable issue of fact within the issues delimited by the pleadings.' [Citations.] The complaint measures the materiality of the facts tendered in a defendant's challenge to the plaintiff's cause of action. [Citation.]" (*FPI Development, Inc. v. Nakashima* (1991) 231 Cal.App.3d 367, 381 [282 Cal.Rptr. 508].) A "plaintiff cannot bring up new, unpleaded issues in his or her opposing papers. [Citation.]" (*Government Employees Ins. Co. v. Superior Court* (2000) 79 Cal.App.4th 95, 98–99, fn. 4 [93 Cal.Rptr.2d 820].) A plaintiff wishing "to rely upon unpleaded theories to defeat summary judgment" must move to amend the complaint before the hearing. (*Leibert v. Transworld Systems, Inc.* (1995) 32 Cal.App.4th 1693, 1699 [39 Cal.Rptr.2d 65]; see also *580 Folsom Associates v. Prometheus Development Co.* (1990) 223 Cal.App.3d 1, 18 [272 Cal.Rptr. 227].)

We conclude from a close reading of the complaint that the claim of improper service of the Sale Notice was beyond the scope of the pleadings. Furthermore, while Borrowers moved to amend the complaint, the proposed amendment did not allege that the sale was invalid because the Sale Notice was sent too early. Accordingly, the trial court could have properly rejected this challenge as being beyond the scope of the pleadings. It is apparent, however, that the court considered this challenge on its merits—either based upon a liberal reading of the complaint, or because moving parties did not object to Borrowers' injection of an unpleaded theory in opposition to the motions and thereby waived any objection. (See *Stalnaker v. Boeing Co.* (1986) 186 Cal.App.3d 1291, 1302 [231 Cal.Rptr. 323].) As discussed *post*, we address Borrowers' contention on its merits and conclude that summary judgment was nonetheless proper.

### 2. *The Sale Notice was served prematurely*

As noted, "[a]fter the notice of default is recorded, the trustee must wait three calendar months before proceeding with the sale. [Citations.]" (*Moeller, supra*, 25 Cal.App.4th at p. 830.) A power of sale under a mortgage or deed of trust may not be exercised after breach by the mortgagor/trustor until (1) recordation of a proper notice of default, and (2) "after the lapse of

the three months [following such recordation] the mortgagee, trustee or other person authorized to take the sale [has given] notice of sale, stating the time and place thereof, in the manner and for a time not less than that set forth in Section 2924f." (§ 2924.)

■ Section 2924f, subdivision (b) prescribes, inter alia, the contents of the notice of sale, and sets forth certain requirements concerning the posting, publication, and recordation of the notice. More specifically, at least 20 days before the sale, the notice of sale must be posted "in one public place in the city where the property is to be sold, if the property is to be sold in a city, or, if not, then in one public place in the judicial district in which the property is to be sold . . . [and] in a conspicuous place on the property to be sold." (§ 2924f, subd. (b)(1).) The statute also requires publication of the notice in a newspaper of general circulation—in the city where the property is situated or judicial district where the property is located if it is not located in a city—for three consecutive weeks, the first publication occurring at least 20 days before the sale date. (*Ibid.*) The notice of sale must also be recorded at least 14 days before the sale date. (*Ibid.*)

■ As discussed in part III. A., *ante*, the foreclosure statute also requires service of the notice of default upon the mortgagor/trustor. (§ 2924b, subd. (b)(2).) The trustee shall, "[a]t least 20 days before the date of sale, deposit or cause to be deposited in the United States mail an envelope, sent by registered or certified mail with postage prepaid, containing a copy of the notice of the time and place of sale, addressed . . . to each trustor or mortgagor at his or her last known address if different than the address specified in the deed of trust or mortgage." (*Ibid.*)

Borrowers contend that the above described statutory scheme requires that any service of a notice of sale under section 2924b, subdivision (b)(2), must occur *only upon* the expiration of three months after recordation of the notice of default. The moving parties respond that the foreclosure statutes do not require that the trustee wait for a full three months to serve the notice of sale; the notice need only be served at least 20 days before the sale date (which sale date is at least 20 days after the three-month period expires).[8] We agree with Borrowers that the Civil Code requires that the trustee wait until three months after the notice of default is recorded to serve the notice of sale.

---

[8] Lender contends that, because section 2924 makes reference to the notice of sale being given in the manner and time as "set forth in section 2924f," the three-month period described in section 2924 does not apply to the *mailing* component of the service of the sale notice. We reject this forced construction of section 2924. That code section's reference to section 2924f was intended to incorporate the specific procedural requirements for the notice of sale (e.g., contents of notice, date of sale); it did not exclude from the three-month waiting period the service by mail of the sale notice as prescribed under section 2924b, subdivision (b)(2).

 Section 2924 requires the trustee to "give notice of sale" only "after the lapse of the three months" following recordation of the notice of default. (§ 2924.) The trustee "gives notice" under the foreclosure statutes by recording, posting, publishing, and mailing the notice of sale. (See §§ 2924b, subd. (b)(2), 2924f, subd. (b)(1).) Clearly, in order to "give notice" of the trustee's sale, the trustee must wait for the expiration of three months after recording the notice of default. (§ 2924; see also *Moeller*, *supra*, 25 Cal.App.4th at p. 830 ["[a]fter the 3-month period has elapsed, a notice of sale must be published, posted and mailed 20 days before the sale and recorded 14 days before the sale"].)

To conclude otherwise would lead to an anomalous result: giving notice of sale would mean one thing in the case of its mailing, but something entirely different in the case of its recordation, posting, and publication. Taken to its extreme, a trustee could serve a notice of sale immediately after recording the notice of default, so long as the sale date noticed was at least three months plus 20 days after the recordation of the notice of default. This flawed interpretation is not only contrary to the requirement under section 2924 that the trustee wait three months to "give notice" of the sale; it would also permit a practice of discouraging borrowers from curing defaults in the three-month period from the notice of default to the time that a trustee may give notice of a foreclosure sale. (See *I.E. Associates v. Safeco Title Ins. Co.* (1985) 39 Cal.3d 281, 286 [216 Cal.Rptr. 438, 702 P.2d 596] [three-month period after notice of default recorded "afford[s] the trustor or junior lienholders an opportunity to cure the default"].)

 Trustee here served the Sale Notice on Borrowers on November 28, 2002, a date that was slightly less than three months after recordation of the Default Notice. The Sale Notice, however, provided Borrowers with *29 days'* notice of the trustee's sale. Thus, while the Sale Notice did not comply fully with the three-month requirement under section 2924, it provided *more than* the 20 days notice mandated under section 2924b, subdivision (b)(2).

### 3. *Premature service of the Sale Notice did not invalidate sale*

Having determined that the Sale Notice was served prematurely, it remains for us to decide whether this irregularity required denial of summary judgment. Borrowers contend that the premature mailing of the Sale Notice— coupled with the fact that the Property was sold (they claim) for far less than its market value—raised a triable issue of fact concerning the validity of the trustee's sale. They argue that prejudice from the procedural defect need not

be shown, and that the defect need not have had an adverse impact on the sales price. Moving parties respond that, even if the Sale Notice was mailed prematurely, Borrowers suffered no prejudice from this minor procedural defect that would warrant setting aside the foreclosure sale.

The parties cite no cases that involve the precise question here: whether a slight deviation from statutory notice requirements may invalidate a foreclosure sale, where the trustee otherwise complies fully with the Civil Code. Stated otherwise, does the need for "strict compliance" with foreclosure notice requirements recited in various cases[9] mean that a trustee's sale must be invalidated no matter how trivial the procedural defect? We answer this question in the negative.

 It is settled that a great disparity between the foreclosure price and the value of the property, by itself, is insufficient to set aside the sale. (4 Miller & Starr, Cal. Real Estate (3d ed. 2000) § 10:210, p. 672.) Inadequate price, even coupled with procedural irregularity, does not automatically render a trustee's sale subject to attack. "[M]ere inadequacy of price, absent some procedural irregularity *that contributed to the inadequacy of price or otherwise injured the trustor*, is insufficient to set aside a nonjudicial foreclosure sale. [Citations.]" (*6 Angels, Inc. v. Stuart-Wright Mortgage, Inc.* (2001) 85 Cal.App.4th 1279, 1284 [102 Cal.Rptr.2d 711], italics added (*6 Angels*); see also *Sargent v. Shumaker* (1924) 193 Cal. 122, 129–130 [223 P. 464] [gross inadequacy in price must be coupled with unfairness or advantage " '*resulting in such gross inadequacy* and consequent injury' " to borrower]; *Crofoot v. Tarman* (1957) 147 Cal.App.2d 443, 446 [305 P.2d 56] [same].)

---

[9] See, e.g., *System Inv., supra*, 21 Cal.App.3d 137, 152–153; *Bisno v. Sax* (1959) 175 Cal.App.2d 714, 720 [346 P.2d 814]. Both cases—cited by Borrowers—are readily distinguishable. In *System Investment*, there were several significant defects that warranted setting aside the trustee's sale, including, inter alia, failure of the default notice to substantially comply with section 2924b, the beneficiary's failure to reply to borrower's written inquiry regarding the claimed default, and absence of service of the default notice on required parties. (*System Inv., supra*, 21 Cal.App.3d at pp. 153–154.) Likewise, in *Bisno v. Sax, supra*, 175 Cal.App.2d 714, the court held that it was error to deny the trustors' request to enjoin the trustee's sale; the equitable relief should have been granted where trustors paid all outstanding amounts due—and the beneficiary accepted such payments—so that the only default remaining at the time of trial was due to acceleration of the entire indebtedness under the note and deed of trust. (*Id.* at pp. 724–725, 730.) The case before us involves neither the occurrence of multiple, substantial defects found in *System Investment*, nor the trustor's presale payment of the outstanding obligation presented in *Bisno v. Sax*.

Here, even assuming that the sale price was grossly inadequate,[10] the slight procedural irregularity in the service of the Sale Notice did *not* cause any injury to Borrowers. They had notice of the original sale date; the trustee's sale did not go forward until almost *one year after* the date noticed. There was no *prejudicial* procedural irregularity. Likewise, there was no evidence that the premature service of the Sale Notice had any impact whatsoever on the ultimate sales price.

In support of their position, Borrowers rely on *Whitman v. Transtate Title Co.* (1985) 165 Cal.App.3d 312 [211 Cal.Rptr. 582] (*Whitman*), and *Estate of Yates* (1994) 25 Cal.App.4th 511 [32 Cal.Rptr.2d 53] (*Yates*). Neither case supports their claim of error. In *Whitman*, the court held that the trustee's refusal to grant the borrower a *statutorily mandated* postponement of the sale, coupled with an inadequate sales price, justified setting aside the trustee's sale. (*Whitman, supra,* 165 Cal.App.3d at pp. 317, 322–323.) The court held that such refusal was a denial of a "substantial statutory right." (*Id.* at p. 322.)[11] Here, no such substantial statutory right was abridged by trustee's premature mailing of the Sale Notice, which otherwise gave Borrowers adequate and timely notice of the trustee's sale.

In *Yates,* the trustee—knowing that the borrower had died and that the public administrator was the acting administrator of her estate—failed to give the estate *any notice* of the decedent's default. (*Yates, supra,* 25 Cal.App.4th at p. 516.) Based upon the complete absence of notice to the administrator and a sale at a grossly inadequate price, the court set aside the trustee's sale. (*Id.* at pp. 522–523.) Again, the facts in *Yates* bear no resemblance to the case here, where Borrowers admittedly had notice of the sale.

While no cases have expressly dealt with the issue we face here, courts have rejected claims of deficient notice where no prejudice was suffered as a result of the procedural irregularity. In one case, the Ninth Circuit rejected the borrower's claim that a foreclosure conducted under California law was

---

[10] Borrowers claimed that the Property had a fair market value of $630,000, more than twice Buyer's bid at the trustee's sale. While the moving parties challenged that claim, whether the price paid at foreclosure was inadequate is irrelevant to the disposition of the summary judgment motions. Because we conclude that there was no procedural irregularity that had any prejudicial impact upon the foreclosure sale, any claim that the sales price was inadequate does not raise a triable issue of material fact in Borrowers' action to set aside the trustee's sale. (See 4 Miller & Starr, Cal. Real Estate, *supra,* § 10:210, p. 672.)

[11] Under former section 2924g, subdivision (c)(1), the trustee, upon trustor's request before conclusion of the trustee's sale, was required to postpone the sale for one business day to afford the trustor the opportunity to pay off the outstanding indebtedness. The court in *Whitman* rejected the argument that this statute vested the trustee with discretion to grant or deny such a postponement request by the trustor. (*Whitman, supra,* 165 Cal.App.3d at p. 320.)

invalid because notice of sale was sent to the wrong address. (See *Lehner v. United States* (9th Cir. 1982) 685 F.2d 1187 (*Lehner*).) The court reasoned: "[T]he record reveals clearly that she [the borrower] knew the foreclosure sale was imminent. Her repeated efforts to delay the impending sale attest to her knowledge. . . . She makes no suggestion that the written notice would have supplied information not already known to her . . . nor did she allege that she never received actual notice of the foreclosure sale. Her constitutional argument thus boils down to due process requiring the meaningless formality of written (rather than oral) notice. [¶] We refuse to elevate form over substance." (*Id.* at pp. 1190–1191; see also *Crummer v. Whitehead* (1964) 230 Cal.App.2d 264, 267–268 [40 Cal.Rptr. 826] [borrower's challenge to sale on basis that default notice not properly served on her attorney rejected, where attorney actually received the notice].)

In another instance, a borrower challenged a foreclosure sale because the sale notice's description of the property to be sold erroneously included property previously released. (See *Crist v. House & Osmonson, Inc.* (1936) 7 Cal.2d 556 [61 P.2d 758] (*Crist*).) This claim was rejected, the court holding that the error was not "of such a substantial nature that prejudice [was] likely to result to the trustors." (*Id.* at p. 559.)

Here, the notice irregularity was far less significant than the procedural defects that the courts held *insufficient* to invalidate the foreclosure sales in *Lehner, supra,* and *Crist, supra.* The borrower in *Lehner* had *no* written notice, yet the sale was upheld since the borrower's actual notice negated any claim of prejudice. (*Lehner, supra,* 685 F.2d at pp. 1190–1191.) In this instance, Borrowers *were provided notice* of the trustee's sale through service of the Sale Notice to their address as listed on the deed of trust. Further— irrespective of Borrowers claim that they did not actually receive the Sale Notice—they had *imputed knowledge* of the trustee's sale at least 10 days before the originally noticed sale date; their bankruptcy counsel had a copy of the written notice as early as December 17, 2001. (See § 2332 [principal and agent deemed to have notice of "whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other"]; see also *Lazzarevich v. Lazzarevich* (1952) 39 Cal.2d 48, 50 [244 P.2d 1] [client held to knowledge of what client's attorney knows and should communicate to him or her].) This afforded more than adequate time to protect Borrowers' interests, which they did, in fact, protect—Borrowers' bankruptcy caused multiple postponements of the foreclosure sale over a period of a number of months. (See also 4 Miller & Starr, Cal. Real Estate,

*supra*, § 10:199, p. 628 [absence of proper notice waived where notice actually received "within an adequate time to protect his or her interests at the sale"].)[12]

Borrowers' objection to the premature notice is, in effect, a criticism that the trustee provided *too much notice* of the sale. There is no evidence that they were prejudiced by the premature mailing of the notice. Given the fact that the trustee's sale did not occur until almost a year after service of the Sale Notice, it is difficult to imagine how Borrowers could claim any prejudice.[13]

Our conclusion that the premature mailing of the Sale Notice did not here raise a triable issue of material fact concerning Borrowers' challenge of the trustee's sale is also consonant with dicta in other California cases. In a recent case involving a challenge to a trustee's sale where there were no notice irregularities, the appellate court noted: " 'As a general rule, there is a common law *rebuttable* presumption that a foreclosure sale has been conducted regularly and fairly.' [Citations.] Accordingly, '[a] successful challenge to the sale requires evidence of a failure to comply with the procedural requirements for the foreclosure sale *that caused prejudice to the person attacking the sale*.' [Citation.] . . . [T]he presumption must prevail when the record lacks substantial evidence of a *prejudicial* procedural irregularity. [Citation.]" (*6 Angels, supra,* 85 Cal.App.4th 1279, 1284, first italics in original, second and third italics added; accord, *Residential Capital v. Cal-Western Reconveyance Corp.* (2003) 108 Cal.App.4th 807, 819, 822 [134 Cal.Rptr.2d 162] [the question is whether "there is a substantial defect in the statutory procedure that is prejudicial to the interests of the trustor and claimants"].)

██ We thus conclude that the premature service of the Sale Notice here, even coupled with an inadequate sales price—where the Trustee otherwise strictly followed the statutory requirements for recording, posting, and publishing the notice, and the notice was served on Borrowers more than the

---

[12] But see *Little v. CFS Service Corp.* (1987) 188 Cal.App.3d 1354, 1361 [233 Cal.Rptr. 923], where the trustee's sale was set aside because the sale notice was not mailed to the trustor, junior lienor, or the judgment creditor, which "lack of notice was clearly substantial and prejudicial."

[13] Borrowers argue further that the Sale Notice was invalid because it did not contain a good faith estimate of the amount of the indebtedness. Although mailed slightly before the expiration of three months after recordation of the Default Notice, there was no evidence that the Sale Notice contained any material inaccuracies. Borrowers presented no evidence that the Sale Notice overstated the indebtedness. There was no evidence, for instance, that a payment was made after the sale notice was mailed but before it was posted, recorded, and published. Indeed, it was undisputed that the last installment payment was made *nearly eight months* before the mailing of the Sale Notice. We thus reject Borrowers' claim that the Sale Notice did not provide a good faith estimate of the amount of the indebtedness.

required 20 days before the initial sale date—did not render the trustee's sale subject to attack. This holding is consistent with the above authorities, and subserves the three purposes of the statutory scheme: "(1) to provide the creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser. [Citation.]" (*Moeller, supra,* 25 Cal. App.4th 822, 830.) Therefore, Borrowers' claim that the Sale Notice was served prematurely did not create a triable issue of material fact requiring denial of summary judgment.[14]

### D. *Claimed Irregularities in the Default Notice*

Borrowers contend that summary judgment was improper because there was a triable issue of fact as to the existence of a "material irregularity" in the Default Notice. The claimed irregularity concerned a discrepancy between the date listed Default Notice (July 1, 2000) as the date of default and the actual date of default. This assertion is founded upon the statement in the declaration of Chomie Neil in support of Lender's summary judgment motion that Borrowers "fell into default under the loan in January of 2001 by failing to make their monthly mortgage payments." This "material defect" in the notice (Borrowers assert) warranted denial of summary judgment. Borrowers' contention is without merit.

As was the case with Borrowers' claim that the Sale Notice was served prematurely, the assertion that the Default Notice was defective was beyond the scope of the complaint. Borrowers did not plead that the trustee's sale should be set aside because the Default Notice was defective. Likewise, the proposed amendment to the complaint did not address this particular issue; instead, it alleged that the Default Notice "contained charges and demands in excess of the actual amount owing." Had Borrowers wished to raise the unpleaded issue of a claimed material defect as to the date of default as reflected in the Default Notice, they were required to move to amend before the summary judgment hearing. (*Leibert v. Transworld Systems, Inc., supra,* 32 Cal.App.4th 1693, 1699.)

---

[14] Trustee—citing *Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171 [70 Cal.Rptr.2d 96]—also argues that Borrowers are judicially estopped from arguing the invalidity of the Sale Notice because of its premature service. Since the complaint alleged that the trustee's sale was invalid because of the *absence* of service of the Sale Notice, Borrowers—Trustee argues—cannot make the contradictory claim that the service was technically improper. We acknowledge that Borrowers' positing of conflicting contentions—one pleaded and one asserted as an 11th hour effort to defeat summary judgment—is troublesome. We, however, reject Trustee's argument, since Borrowers never prevailed in any judicial proceeding on their claim that there was no service of the Sale Notice. (See *id.* at p. 183 & fn. 8 [judicial estoppel requires, inter alia, showing that party was successful in assertion of earlier position].)

Although Borrowers' position is unclear, we will assume that they claim that this discrepancy in the Default Notice *was* embraced by the proposed amendment that more generally claimed that the notice contained an over-statement of the amount of default. It is apparent from the record that the trial court, in fact, did consider the merits of Borrowers' claim in conjunction with their motion to amend. Nonetheless, even were this issue properly before the court, it did not justify denial of summary judgment.

Lender submitted a supplemental declaration from Neil describing in detail the nature of Borrowers' default and explaining his prior declaration that the Borrowers' default commenced in January 2001. According to this supplemental declaration, as of January 1, 2001, Borrowers *were*, in fact, delinquent back to the monthly payment that was due July 1, 2000. On January 4, 2001, Borrowers made a loan payment that was returned for insufficient funds. Borrowers made another loan payment on March 7, 2001, that was returned for insufficient funds. Borrowers' last payment before the Default Notice was recorded in September 2001 was made March 30, 2001; it was applied to the loan installment that had been due July 1, 2000. At the time the Default Notice was recorded, Borrowers were 15 months in arrears under the note and deed of trust. Neil also declared that there were no "excessive charges" reflected in the Default Notice.

As observed by the trial court, Neil's declarations disclosed that the Default Notice was "not quite correct." The Default Notice stated that the breach was the failure to make the "installment which became due on 7/1/00"; the March 30, 2001 payment was actually applied to the July 1, 2000 installment.[15]

Despite this inaccuracy as to the date of default, there was no evidence presented that the Default Notice did not properly state the nature of the default (failure to make installment payments and to pay late charges), or the amount of the default ($38,011.40 as of Sept. 4, 2001). "If one breach is correctly stated, an erroneous statement of other defaults does not invalidate the [default] notice." (4 Miller & Starr, Cal. Real Estate, *supra*, § 10:183, p. 561, fn. omitted.) As stated in one case in which a challenge to a foreclosure was rejected where the default notice accurately stated certain

---

[15] Lender's brief contains four material misstatements of the record to the effect that Borrowers made *no* payments in 2001 and that the only two attempted payments that year (on Jan. 4 and Mar. 7, 2001) were both returned for insufficient funds. Lender makes these factual assertions—directly contradicted by the declaration of its loan officer, Neil—to support its erroneous claim that the July 1, 2000 installment was, in fact, owing when the Default Notice was recorded in September 2001. While we are troubled by these misstatements, they do not impact our ultimate rejection of Borrowers' claim that irregularities in the Default Notice required denial of summary judgment.

defaults but was inaccurate as to one of the installments for which an extension was granted: "[T]he statute is sufficiently complied with if the notice of default contains a correct statement of some breach or breaches sufficiently substantial in their nature to authorize the trustee or beneficiary to declare a default and proceed with a foreclosure. Since reliance on these breaches is manifestly enough to authorize the proceeding, the circumstance that erroneous statements may appear in the notice about other breaches, which breaches, if they occurred, would only be cumulative so far as their effect was concerned, may properly be treated as immaterial." (*Birkhofer v. Krumm* (1938) 27 Cal.App.2d 513, 523–524 [81 P.2d 609].)

One of the signal purposes of the notice of default is to advise the trustor of the amount required to cure the default. (4 Miller & Starr, Cal. Real Estate, *supra*, § 10:183, p. 560.) There is no evidence that Borrowers here were misled in any way by the Default Notice. For instance, the fact that the date of default was stated incorrectly in the Default Notice did not cause Borrowers to act or fail to act in any way that resulted in their loss of the Property.

Moreover, we reject Borrowers' contention that the irregularity in the Default Notice raised a triable issue of fact, because "[a] material defect in the notice, such as a gross misstatement of the amount in default, voids the sale." (Bernhardt, Cal. Mortgage and Deed of Trust Practice (Cont.Ed.Bar 3d ed. 2004) § 2.22, pp. 72–73.) It is clear that the error in the Default Notice—incorrectly stating the breach to have occurred with respect to the July 1, 2000 payment—was an *immaterial* one.

Any suggestion by Borrowers that the Default Notice contained any material misstatements—such as an overstatement of the amount of default—is founded on nothing more than speculation. "Speculation, however, is not evidence" that can be utilized in opposing a motion for summary judgment. (*Aguilar, supra*, 25 Cal.4th 826, 864; see also *Joseph E. Di Loreto, Inc. v. O'Neill* (1991) 1 Cal.App.4th 149, 161 [1 Cal.Rptr.2d 636] [summary judgment opposition based on inferences "must be reasonably deducible from the evidence, and not such as are derived from speculation, conjecture, imagination, or guesswork"].) Borrowers' opposition to the summary judgment motions did not raise a triable issue of material fact concerning any claimed irregularities in the Default Notice.[16]

---

[16] Borrowers do not argue on appeal that the trial court abused its discretion by denying their motion to amend the complaint. They are therefore deemed to have waived any such challenge. (See *Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 [188 Cal.Rptr. 115, 655 P.2d 317].) The proposed amendment alleged that the trustee's sale was invalid because the Default Notice contained excessive charges. There was no refutation of Lender's evidence—in the supplemental Neil declaration—that the Default Notice contained no excessive charges. Therefore, since there was no evidence to support the

## E. *Denial of Continuance of Summary Judgment Hearing*

One day before the deadline for opposing Trustee's summary judgment motion, Borrowers filed an ex parte application seeking various relief. Their application—opposed by Lender—sought an order shortening time for service and hearing on motions (a) to continue the August 25, 2003 trial date, (b) to extend the deadline to serve expert witness disclosures, (c) to compel Lender to provide further responses to interrogatories, (d) for leave to shorten response time in connection with service of additional interrogatories, and (e) for leave to amend Borrowers' complaint and answer. Borrowers also sought an order continuing the hearing on the summary judgment motions; they requested that Trustee's motion (set for July 24, 2003) be continued to the same date as the hearing on Lender's motion (Aug. 20, 2003).[17] Although the record is sparse, the court apparently denied the application to continue the Trustee's motion, but granted Borrowers' application to shorten time for service and hearing on their motions.[18]

Code of Civil Procedure section 437c, subdivision (h), reads as follows: "If it appears from the affidavits submitted in opposition to a motion for summary judgment or summary adjudication or both that facts essential to justify opposition may exist but cannot, for reasons stated, then be presented, the court shall deny the motion, or order a continuance to permit affidavits to be obtained or discovery to be had or may make any other order as may be just. The application to continue the motion to obtain necessary discovery may also be made by ex parte motion at any time on or before the date the opposition response to the motion is due."

We review the court's decision under the abuse of discretion standard. (*Desaigoudar v. Meyercord* (2003) 108 Cal.App.4th 173, 190 [133 Cal.Rptr.2d 408]; *Frazee v. Seely* (2002) 95 Cal.App.4th 627, 634–635 [115 Cal.Rptr.2d 780].) Notwithstanding the court's discretion in addressing such continuance requests, "the interests at stake are too high to sanction the denial of a continuance without good reason." (*Frazee v. Seely, supra,* 95 Cal.App.4th at p. 634.) Thus, "[t]o mitigate summary judgment's harshness, the statute's drafters included a provision making continuances—which are

---

proposed amendment, the court appropriately exercised its discretion by denying leave to amend. (Cf. *Soderberg v. McKinney* (1996) 44 Cal.App.4th 1760, 1773 [52 Cal.Rptr.2d 635] [leave to amend properly denied where proposed amendment fails to state a cause of action].)

[17] The application requested that the two summary judgment motions be heard "on the Wednesday prior to trial of this action." Since trial was set for August 25, 2003, we infer that the application sought a continuance of the hearing on Trustee's motion to August 20, 2003.

[18] In reality, although it was not a continuance granted under Code of Civil Procedure section 437c, subdivision (h), we note that the hearing on Trustee's motion was *effectively continued* twice for further briefing; the last hearing date was *22 days* after the original date noticed for the hearing.

normally a matter within the broad discretion of trial courts—virtually mandated ' "upon a good faith showing by affidavit that a continuance is needed to obtain facts essential to justify opposition to the motion." [Citation.]' [Citation.] . . . [There is] little room for doubt that such continuances are to be liberally granted." (*Bahl v. Bank of America* (2001) 89 Cal.App.4th 389, 395 [107 Cal.Rptr.2d 270]; accord, *Dee v. Vintage Petroleum, Inc.* (2003) 106 Cal.App.4th 30, 34–35 [129 Cal.Rptr.2d 923].)

Even employing the standard under which continuance requests under Code of Civil Procedure section 437c, subdivision (h) are liberally granted, we conclude that the trial court did not abuse its discretion by denying Borrowers' request in this instance. We reach this conclusion for at least three reasons.

First, the application did not contain the requisite declaration indicating in good faith the essential facts that Borrowers believed existed to oppose the motion and the reasons those facts could not be presented in opposition to the motion. The application did not identify the declarations they sought or the discovery they needed to develop the essential facts to oppose the motion. Instead, the application pointed to (1) an alleged discrepancy between the date of default as indicated in the Default Notice and as noted in the Neil declaration in support of Lender's motion, and (2) Lender's responses to interrogatories that Borrowers claimed were inadequate. The information sought in the interrogatories, however, had nothing to do with the claimed discrepancy in the Default Notice.[19] The declaration in support of the application thus failed to satisfy the requirement that it show "facts essential to justify opposition may exist." (Code Civ. Proc., § 437c, subd. (h); *Roth v. Rhodes* (1994) 25 Cal.App.4th 530, 548 [30 Cal.Rptr.2d 706].)

Second, assuming, arguendo, the sufficiency of the declaration in support of Borrowers' application, the trial court was nonetheless justified in concluding that there were no facts "essential" to the disposition of the motion that justified a continuance of the hearing. The application included Borrowers' joint declaration: (1) indicating that they were uncertain as to the precise amount that they owed Lender before the foreclosure because of "turmoil in [their] lives"; and (2) attaching information from the Internet that they claimed indicated that Lender had been subjected to "widespread accusations of fraud, excessive charges, sharp practices, etc." The former assertion did not disclose an essential fact warranting a continuance. Further, the Internet

---

[19] The interrogatories—to which Lender asserted objections—inquired as to the existence of any investigation conducted by a public entity concerning the Lender's alleged imposition of "excessive charges upon borrowers" over the past seven years.

information was clearly objectionable hearsay[20] and—based, inter alia, upon the issues as framed by the pleadings—did not furnish a legitimate basis under Code of Civil Procedure section 437c, subdivision (h), for continuance of the motion.

Moreover, Borrowers' application alluded to Lender's answers to interrogatories that they claimed were deficient; however, the information sought in those interrogatories was not relevant to the matters alleged in the complaint. Thus, it was appropriate for the court to deny Borrowers' request to continue the hearing on Trustee's summary judgment motion because the matters raised in the application did not disclose "that facts essential to justify opposition may exist but cannot, for reasons stated, then be presented." (Code Civ. Proc., § 437c, subd. (h); *FSR Brokerage, Inc. v. Superior Court* (1995) 35 Cal.App.4th 69, 76 [41 Cal.Rptr.2d 404].)

Third, the application presented "no justification for the failure to have commenced the use of appropriate discovery tools at an earlier date." (*FSR Brokerage, Inc. v. Superior Court, supra*, 35 Cal.App.4th at p. 76.) Borrowers did not explain any failure to discover facts relating to the motions. For instance, to the extent that Borrowers in their joint declaration indicated uncertainty as to the amount of the delinquency prior to the sale, they could have easily requested this information through basic discovery at the commencement of the case. They provided no explanation for not having done so. Thus, while perhaps not determinative (see *Bahl v. Bank of America, supra*, 89 Cal.App.4th 389, 397–398), Borrowers lack of diligence here was an additional factor relevant to the court's exercise of discretion in its refusal to continue the summary judgment hearing. (*FSR Brokerage, Inc. v. Superior Court, supra*, 35 Cal.App.4th at p. 76; *A & B Painting & Drywall, Inc. v. Superior Court* (1994) 25 Cal.App.4th 349, 356–357 [30 Cal.Rptr.2d 418].)

■ For all of the above reasons, we conclude that the trial court did not abuse its discretion by denying Borrowers' application to continue the hearing on Trustee's summary judgment motion.

---

[20] Lender filed formal objections to Borrowers' declaration, asserting, inter alia, that the Internet information lacked foundation, was not authenticated, and was inadmissible hearsay.

## DISPOSITION

There were no triable issues of material fact presented in connection with the motions for summary judgment, and summary judgment was thus appropriate to dispose of the claims alleged in the complaint. Accordingly, the judgment is affirmed.

Premo, Acting P. J., and Bamattre-Manoukian, J., concurred.