Filed 2/10/14  Rodriguez v. Nat.Ttitle Co. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| HOWARD RODRIGUEZ, | B238782 |
| Plaintiff and Appellant, | (Los Angeles County |
| v. | Super. Ct. No. BC414583) |
| NATIONAL TITLE CO., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Zaven V. Sinanian, Judge.  Reversed and remanded.

Burke Molina and Gregory M. Burke for Defendant and Appellant.

Greenberg Traurig, Marke E. Ferrario and Tyler R. Andrews for Defendant and Respondent.

_____

Howard Rodriguez appeals from the summary judgment granted for defendant National Title Co., contending that the trial court improperly reconsidered its earlier order denying summary judgment and erred in finding no triable issues of fact to support his claims. We reverse the summary judgment and therefore do not reach the procedural issue.

## FACTS AND PROCEDURAL HISTORY

1. *Rodriguez's Fraud Allegations*

Howard Rodriguez bought 10 Las Vegas-area homes for investment purposes in 2006, but lost those properties in foreclosure one year later. He then sued Derrick and Cynthia Phelps and certain businesses they owned for fraud, alleging that they operated an investment scam that duped him into buying the properties. He also sued National Title Co., which handled the escrow on his transactions, alleging that National was a willing participant in, and necessary part of, the Phelpses' scheme. In particular he singled out Linda Mack of National, whom he alleged was an officer of the escrow company.

Rodriguez's second amended complaint alleged that the Phelpses implemented a fraud that duped him and others into buying multiple residential properties at one time as part of an "investment portfolio." The Phelpses failed to disclose negative information about the investments, which were "unqualified and unregistered securities." The Phelpses falsely promised to pay buyers such as Rodriguez large sums of money to cover their mortgage payments for the short term, that Rodriguez would not be responsible for the mortgage payments, and that the Phelpses would obtain other persons to take over the properties and eventually buy them pursuant to something called a "Contract For Deed."

Rodriguez alleged that the true purpose of the scheme was to submit loan documents that falsely inflated both the value and the purchase price of the properties, thereby causing lenders to approve loans in amounts above the purchase price, with the

2

excess funds going to the Phelpses. No buyers under a "Contract For Deed" were ever procured by defendants, and Rodriguez eventually lost the properties in foreclosure.

Rodriguez alleged that the Phelpses conspired with other persons and business entities to help carry out this scheme, and that the excess loan funds derived from the scheme were distributed among the co-conspirators. Some co-conspirators completed false loan applications in order to help unqualified buyers qualify for loans. According to the pleadings, Linda Mack was an officer of National and took direct part in the scheme. The Phelpses' promotional materials listed National as its exclusive title and escrow company. Mack was the escrow officer on more than 100 properties as part of this scheme. She allegedly forged escrow documents and hired notaries who would do the same. She also refused to provide some buyers with their final closing statements.

These allegations formed the basis of three causes of action in the second amended complaint: fraud, breach of fiduciary duty, and unfair competition (Bus. & Prof. Code, § 17200, et seq.).

2.    *The Summary Judgment Motion*

National brought a summary judgment motion, contending that there were no triable fact issues on the fraud cause of action because there was no evidence that it knew about or took part in the Phelpses' alleged fraudulent scheme, or that it acted other than as a neutral third party escrow. National challenged the breach of fiduciary duty cause of action on the ground that as a neutral third party escrow it owed Rodriguez no fiduciary duty to police or monitor the conduct of the parties or the merits of their transaction. Finally, National challenged the unfair competition cause of action because the trial court had previously sustained a demurrer to that claim without leave to amend. National's motion did not seek summary adjudication of any individual cause of action in the alternative, however.[1]

---

[1]    At this point we briefly describe Rodriguez's procedural challenge to the summary judgment ruling in order to give context to our disposition and the ultimate fate of the fiduciary duty and unfair competition causes of action.

3

National's motion was based on the declaration of its president, Tracy Bouchard, and on Rodriguez's interrogatory responses, which consisted primarily of boilerplate shotgun objections that provided no evidence concerning the evidentiary basis for Rodriguez's claims, including causation and damages, apart from the assertion that Linda Mack had forged his name on certain escrow documents.

Bouchard's declaration said, in essence, that National was unaware of, and did not participate in any fraudulent scheme with the Phelpses, it had made no representations to Rodriguez on any matters, that all communications with Rodriguez were contained in the

---

The trial court initially denied summary judgment because it believed there were triable fact issues on the fraud cause of action. The trial court believed the fiduciary duty cause of action should fail because National had no such duty, but was unable to rule on that cause of action because National had not asked for summary adjudication of issues in the alternative. As for the unfair competition cause of action, the trial court said that was best addressed by a subsequent motion for nonsuit or judgment on the pleadings. The trial court issued a minute order stating that its tentative ruling to deny the motion was "adopted as the final order of the court."

Because Rodriguez's lawyer was about to start a 60-day state bar proceeding, the trial court directed National to prepare an order. National did so, but later objected to its own proposed order and sought clarification from the trial court on the ground that the trial court's evidentiary rulings striking large portions of Molina's and Rodriguez's declarations left no evidence to support the order denying summary judgment, and made it impossible for National to craft an order that complied with the requirement that it specify the disputed facts and evidence that justified a denial of summary judgment. (Code Civ. Proc., § 437c, subd. (g).)

Ultimately, the trial court agreed to treat its previous ruling as a tentative order and permitted the parties to submit supplemental points and authorities to reargue the merits of the motion in light of the trial court's evidentiary rulings. The trial court also allowed National to file a motion for judgment on the pleadings as to the fiduciary duty and unfair competition claims, which National did. After reviewing the supplemental points and authorities, the trial court granted the summary judgment. Its order did not specify the disputed evidence and facts that justified denial of summary judgment and also did not rule on National's alternative motion for judgment on the pleadings as to the fiduciary duty and unfair competition causes of action. Rodriguez contends that the trial court lacked authority to effectively reconsider its earlier order, an issue we need not reach after consideration of the merits of the summary judgment motion.

4

escrow files in Rodriguez's possession, that escrow companies are not allowed by law to investigate or police the conduct of buyers and sellers in real estate transactions, and that Rodriguez put no money down on his purchases.[2]  Bouchard's declaration and National's separate statement of undisputed facts did not mention Mack or otherwise address Rodriguez's allegation that Mack was an officer of National.  National also never challenged Rodriguez's allegations concerning the existence, nature, or effect, of the Phelpses' fraudulent scheme.

Rodriguez's summary judgment opposition rested on his and attorney Molina's declarations.[3]  After accounting for the sustained objections to Rodriguez's declaration, the following relevant evidence remained:  (1) Rodriguez's assertion that Linda Mack was an officer of National and told him that National was the largest escrow company in Las Vegas, had worked with the Phelpses' companies for years on their investment program, and "everyone has made a lot of money on their investment."; (2) Mack told Rodriguez that buyers would be placed in the properties under a contract for deed, that National would record the deed and other documents, that those buyers would cover the mortgage payments as the property values increased, and that the buyers would qualify to buy the properties after making mortgage payments for one year; (3) National failed to provide him with settlement statements and forged his signature on the escrow documents for several of the properties, and he lost his entire life savings from his participation in the deal; (4) National knew his annual income of $68,000 was insufficient to cover the

---

[2]    The trial court sustained several evidentiary objections to portions of Bouchard's declaration, but National does not challenge those rulings on appeal.  Therefore when recounting the contents of this declaration, we have eliminated those portions as to which Rodriguez's evidentiary objections were sustained.

[3]    The trial court sustained numerous evidentiary rulings to the declarations of Molina and Rodriguez, but Rodriguez does not challenge those rulings on appeal.  Therefore when recounting the contents of those declarations, we have eliminated those portions as to which National's evidentiary objections were sustained.  Rodriguez does challenge the trial court's rulings that overruled some of his objections to Bouchard's declaration, but we affirm even in light of those portions of the declaration and therefore do not reach those issues.

mortgage payments on the 10 properties he bought; (5) the defendants did not provide buyers as promised and he ended up losing the properties in foreclosure; and (6) he was apprehensive about going through with his investment but he went ahead after Mack made her representations concerning the merits of the investment plan.

All that remained from Molina's declaration was the following statement: Rodriguez said in his sworn interrogatory responses that he did not sign any of the documents notarized by Linda Mack and was not in Las Vegas when they were purportedly signed.

National's supplemental summary judgment points and authorities argued that the scant remaining evidence offered by Rodriguez was insufficient to counter National's original showing, leaving Rodriguez unable to raise triable issues of fact that National committed any fraud, that National's conduct caused him any harm, or that he in fact suffered any damages at all due to National's conduct.

Rodriguez's supplemental summary judgment opposition was essentially a recap of the evidence set forth above, but concluded by contending that National failed to disprove that Mack falsely notarized documents, forged his signature on escrow documents, and made false representations to induce him and others to invest in the Phelpses' fraudulent scheme.[4]

## STANDARD OF REVIEW

Summary judgment is granted when a moving party establishes the right to the entry of judgment as a matter of law. (§ 437c, subd. (c).) In reviewing an order granting summary judgment, we must assume the role of the trial court and re-determine the merits of the motion. In doing so, we must strictly scrutinize the moving party's papers.

---

[4] Rodriguez's supplemental opposition included a declaration from Mario Gonzalez, who had also sued National and the Phelpses. The trial court sustained National's objection to that new declaration in its entirety and even though Rodriguez mentions that declaration in his appellate briefs, he does not challenge the trial court's ruling. We therefore disregard the declaration. Rodriguez's supplemental opposition also raised certain evidentiary and procedural issues that he does not raise on appeal.

6

The declarations of the party opposing summary judgment, however, are liberally construed to determine the existence of triable issues of fact. All doubts as to whether any material, triable issues of fact exist are to be resolved in favor of the party opposing summary judgment. While the appellate court must review a summary judgment motion by the same standards as the trial court, it must independently determine as a matter of law the construction and effect of the facts presented. (*Dominguez v. Washington Mutual Bank* (2008) 168 Cal.App.4th 714, 719-720 .)

A defendant moving for summary judgment meets its burden of showing that there is no merit to a cause of action if that party has shown that one or more elements of the cause of action cannot be established or that there is a complete defense to that cause of action. (§ 437c, subds. (o)(2), (p)(2).) The pleadings determine the issues to be addressed by a summary judgment motion and the declarations filed in support of such a motion must be directed to the issues raised by the pleadings. (*Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 84.) If the defendant does so, the burden shifts back to the plaintiff to show that a triable issue of fact exists as to that cause of action or defense. In doing so, the plaintiff cannot rely on the mere allegations or denial of his pleadings, "but, instead, shall set forth the specific facts showing that a triable issue of material fact exists . . . ." (§ 437c, subd. (p)(2).) A triable issue of material fact exists "if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof. [Fn. omitted.]" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)

## DISCUSSION

1.     *Triable Fact Issues Exist on Rodriguez's Fraud Cause of Action*

National begins its appellate argument by correctly describing the elements of a fraud cause of action: making a knowingly false representation to the plaintiff with the intent to induce his reliance on the representation, along with the plaintiff's justifiable reliance on the false assertion and resulting damage. (*Conroy v. Regents of University of*

7

*California* (2009) 45 Cal.4th 1244, 1245.) As it did below, National focuses on these elements and contends: (1) the statement attributed to Mack were no more than non-actionable opinion and did not rise to the level of a fraudulent representation; (2) her supposed forgeries of escrow documents were not false statements and in any event caused Rodriguez no harm because he did not deny that he bought the properties covered by those documents; (3) there was no evidence that Mack knew any of her statements were false or intended to induce Rodriguez's reliance on them; (4) there was no evidence that he justifiably relied on those statements; (5) Mack was merely a low level employee with no ability to speak for and therefore bind the corporation; and (6) he cannot show that National caused him to incur any damages, or that he incurred any damages at all.

At the supplemental summary judgment hearing, Rodriguez argued that the Phelpses' scheme could not function without National's assistance, contending that National "aided and abetted," was "part of the whole conspiracy" and was therefore "equally liable for damages on this." As it did below, National's appellate argument overlooks Rodriguez's allegations that National was a member of a conspiracy with the Phelpses and others.[5]

A civil conspiracy is not an independent tort. Instead, it is a theory of vicarious legal liability for those who do not actually commit a tort but share the common plan of the direct perpetrators. (*Kidron v. Movie Acquisition Corp.* (1995) 40 Cal.App.4th 1571, 1581 (*Kidron*).) A plaintiff alleging civil conspiracy must provide substantial evidence of the three elements: (1) the formation and operation of the conspiracy; (2) wrongful

---

[5] Counsel for National contended at oral argument that the conspiracy issue had never been raised either below or on appeal by Rodriguez. The record shows otherwise. As discussed earlier, the second amended complaint includes several specific conspiracy allegations. Rodriguez's opposition separate statement referred to National as a co-conspirator several times as well. When the trial court originally denied National's summary judgment motion, it did so in part because National did "not address[] the allegations of conspiracy, aiding and abetting." As just noted, counsel for Rodriguez argued the conspiracy issue at the supplemental summary judgment hearing. Although the issue is not well raised on appeal, Rodriguez's appellate briefs mention the issue in several places.

conduct in furtherance of the conspiracy; and (3) resulting damages. (*Ibid.*) Under this doctrine, a defendant who made no fraudulent representations can be held liable for the false representations of a co-conspirator. (*Ibid.*) Corporations may be held vicariously liable for the tortious acts of their agents committed within the course and scope of the agency or employment. (*Sandler v. Sanchez* (2012) 206 Cal.App.4th 1431, 1442.)

In short, Rodriguez does not need to prove that National committed fraud, only that it took part in a conspiracy to do so. National has not challenged Rodriguez's allegations concerning the formation and operation of the Phelpses' alleged conspiracy. Therefore, the first element is undisputed. Even if National made no false representations, Rodriguez's declaration states that National was listed in the Phelpses' promotional materials as the investment plan's escrow company of choice, Mack forged his name on documents, presumably to assist in closing those deals, and she encouraged Rodriguez to go through with the deal by assuring him it was sound. If true, those were wrongful acts in furtherance of the conspiracy. Even though National contends that Mack was merely a low level employee, it does so by way of argument only. Instead, as noted earlier, it produced no evidence to counter's Rodriguez's allegation or the statement in his declaration that Mack was an officer of National, leaving that as a disputed fact.[6]

Finally, Rodriguez must show that he suffered damages as a result of the conspiracy, not from any fraudulent representations by National. (*Kidron, supra,* 40 Cal.App.4th at p. 1581.) As for evidence of any actual damages, even though National contends that Rodriguez put no money down on the properties, Rodriguez states in his declaration that he put up $25,000 in earnest money, incurred unspecified maintenance costs, accounting fees and property taxes, and was still personally liable on a second trust deed on the 10 properties he purchased. As a result, Rodriguez said he lost his life savings and incurred damages of more than $600,000. In addition, his credit was damaged, he lost his personal business, and was forced to file for bankruptcy. These

---

[6] As part of his conspiracy argument, Rodriguez asked us to take judicial notice of a federal criminal indictment against the Phelpses and Mack. We decline to do so.

9

assertions raise triable issues of fact as to whether Rodriguez suffered monetary damages from the fraudulent conspiracy.

Because triable issues of fact remain on Rodriguez's fraud cause of action, and because National did not seek summary adjudication as to the other two causes of action, we reverse the summary judgment for National and remand for further proceedings.[7]

## DISPOSITION

The summary judgment is reversed and the matter is remanded to the trial court. Appellant shall recover his appellate costs.

RUBIN, ACTING P. J.

WE CONCUR:

FLIER, J.

GRIMES, J.

---

[7] The ultimate disposition of the fiduciary duty and unfair competition causes of action is something we leave to the trial court in the first instance.