Filed 2/8/21  Gonzalez v. Quality Loan Service Corp. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| GUSTAVO G. GONZALEZ, JR., | F080526 |
| Plaintiff and Appellant, | (Super. Ct. No. VCU278481) |
| v. | |
| QUALITY LOAN SERVICE CORPORATION, | **OPINION** |
| Defendant and Respondent. | |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Tulare County.  Bret D. Hillman, Judge.

Gustavo G. Gonzalez, Jr., in pro. per., for Plaintiff and Appellant.

McCarthy & Holthus and Melissa Robbins Coutts for Defendant and Respondent.

-ooOoo-

Appellant, a borrower and former homeowner, sued the corporation that acted as trustee under the deed of trust on his residence and conducted a nonjudicial foreclosure sale.  Appellant attempted to state causes of action for wrongful foreclosure, slander of title, and recording false documents.  The corporation filed a demurrer, contending appellant failed to allege facts sufficient to show the foreclosure was wrongful or he

---

[*] Before Smith, Acting P.J., Meehan, J. and Snauffer, J.

continued to own any interest in the residence after the nonjudicial foreclosure sale. The trial court sustained the demurrer and entered a judgment of dismissal.

On appeal, appellant contends a mortgage statement shows his account was settled and the balance paid in full and a recorded full reconveyance shows ownership of the residence was returned to him. Our independent examination of the appellate record, which includes the documents attached to appellant's complaint, shows a notice of default was recorded in September 2015; a notice of trustee's sale was recorded in December 2015; the trustee's sale was conducted on January 21, 2016; the husband and wife who purchased the property at the trustee's sale paid $158,500; the sale proceeds were applied by the trustee to satisfy the debt secured by the deed of trust, and the full reconveyance (which was executed and recorded after the trustee's sale) transferred nothing to appellant. On the last point, the wording of the full reconveyance stated the transfer was being made "to the person or persons legally entitled thereto." As explained below, appellant's successors in interest, the husband and wife who purchased the property at the foreclosure sale, are the persons "legally entitled" to the rights and interests (if any) transferred by the full reconveyance. (See Civ. Code, § 2941.)

The mortgage statement sent by the lender to appellant after the trustee's sale to notify appellant that the balance on his loan was zero does not support his claim that he still owns the residence. All his ownership interests were extinguished by the nonjudicial foreclosure sale. Also, appellant's theory that the trustee was not authorized to conduct the trustee's sale because the loan was paid off is contradicted by the exhibits to his complaint. Those documents show the loan was in default at the time of the foreclosure sale and the debt owed was satisfied with the proceeds from the foreclosure sale. Furthermore, we have identified no missteps in the foreclosure process or anything else that might have violated appellant's statutory or contractual rights. Therefore, we conclude appellant has failed to allege, or demonstrate he could allege if given leave to amend, facts constituting a cause of action for wrongful foreclosure or slander of title.

2.

We therefore affirm the judgment of dismissal.

## FACTS

In 2011, plaintiff Gustavo G. Gonzalez, Jr. (appellant) and Hortencia Mendez Molina purchased a residence located on Asa Gray Way in Dinuba (Property). A grant deed showing their ownership of the Property was recorded in the official records of Tulare County on June 30, 2011. To purchase the Property, appellant and Molina obtained a loan in the amount of $152,215 from First Mortgage Corporation, a California corporation. The loan was secured by a deed of trust dated June 23, 2011, and recorded on June 30, 2011 (Deed of Trust). The Deed of Trust named appellant and Molina as borrowers; First Mortgage Corporation as lender; Hacienda Service Corporation, a California corporation, as trustee; and Mortgage Electronic Registration Systems, Inc. (MERS), a Delaware corporation, as the beneficiary. The Deed of Trust also stated that "MERS is a separate corporation that is acting solely as nominee for Lender and Lenders' successors and assigns." The Deed of Trust irrevocably granted and conveyed the Property to the trustee, in trust, with the power of sale. Paragraphs 19 and 20 of the Deed of Trust stated:

> "19. **Reconveyance**. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. *Trustee shall reconvey the Property without warranty, to the person or persons legally entitled to it*. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under applicable law. If the fee charged does not exceed the fee set by applicable law, the fee is conclusively [p]resumed to be reasonable.

> "20. **Substitute Trustee**. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded

3.

and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution." (Italics added.)

In April 2014, Molina signed a gift grant deed conveying her interest in the Property to appellant. In May 2014, the gift grant deed was recorded in the official records of Tulare County.

On August 25, 2015, Monika Searcy, as Vice President of MERS, signed a substitution of trustee stating MERS substituted defendant Quality Loan Service Corporation as trustee under the Deed of Trust. On August 28, 2015, Monika Searcy, as Director of Operations of First Mortgage Corporation, executed an assignment of deed of trust stating that, for value received, MERS "hereby grants, assigns, and transfers to [¶] First Mortgage Corporation [¶] All beneficial interest under that certain Deed of Trust." As a result, First Mortgage Corporation, the lender under the Deed of Trust, also became the beneficiary under the Deed of Trust. The assignment of deed of trust was recorded in the official records of Tulare County on August 31, 2015. The substitution of trustee was recorded on September 3, 2015.

On September 15, 2015, Silver De Vera, Assistant Secretary of Quality Loan Service Corporation, signed a notice of default and election to sell under deed of trust. The notice stated (1) the Property was in foreclosure because appellant was behind in his payments, (2) the Property could be sold without any court action, (3) no sale date could be set until 90 days from the date the notice of default was recorded, (4) the loan could be brought into good standing by the payment of $8,465.24. The notice of default was recorded on September 17, 2015.

In October 2015, First Mortgage Corporation, the lender and beneficiary, executed an assignment of deed of trust that transferred the Deed of Trust to Freedom Mortgage Corporation. The assignment was recorded on November 5, 2015.

4.

On December 22, 2015, Quality Loan Service Corporation, in its capacity as trustee, recorded a notice of trustee's sale stating the Property would be sold at a public sale conducted on January 21, 2016, at 2:00 p.m. on the steps of the City Hall in Tulare. The trustee's sale was held as scheduled. The Property was sold to the highest bidder, a husband and wife who paid $158,500. The trustee's deed upon sale stated the amount of the unpaid debt together with costs was $157,940.91. The trustee's deed upon sale was executed by Quality Loan Service Corporation on January 28, 2016; was recorded on February 2, 2016; and stated Quality Loan Service Corporation, as trustee, granted and conveyed to the purchasers "all right, title and interest conveyed to and now held by it as Trustee under the Deed of Trust in and to the [P]roperty."

On February 17, 2016, almost four weeks after the trustee's sale, a substitution of trustee was recorded in the official records of Tulare County as document number 2016-0008559. It stated "the undersigned desires to substitute a different Trustee for the purpose of reconveying said Deed of Trust" and "the undersigned hereby substitutes Freedom Mortgage Corporation as Trustee under said Deed of Trust." The undersigned was identified as MERS, "as Nominee for Freedom Mortgage Corporation, its Successors and Assigns." The person signing on behalf of MERS was "Danielle Breining, Assistant Vice President."

Also on February 17, 2016, a "FULL RECONVEYANCE" was recorded in the official records of Tulare County as document number 2016-0008560. "Danielle Breining, Assistant Vice President" signed the full reconveyance on behalf of Freedom Mortgage Corporation. The full reconveyance stated "Freedom Mortgage Corporation as present Trustee for the Deed of Trust … having been requested in writing, by the holder of the obligations secured by said Deed of Trust, to reconvey the estate granted to trustee under said Deed of Trust, does hereby reconvey *to the person or persons legally entitled thereto*, without warranty, all the estate, title and interest acquired by Trustee under said

Deed of Trust." (Italics added.) It also referred to "Freedom Mortgage Corporation# 0053089926," which is the number assigned to appellant's loan.

Freedom Mortgage Corporation sent appellant a mortgage statement dated February 18, 2016, that listed the total amount due on his loan as $.00. The statement's section listing transaction activity stated the payoff date was January 25, 2016. The statement's "Past Payment Breakdown" section listed the total paid as $157,446.45, of which $143,536.39 was allocated to principal, $7,176.84 was allocated to interest, $5,550.90 was allocated to escrow (taxes and insurance), $672.90 was allocated to fees, and $509.52 was allocated to late charges.

## PROCEEDINGS

In May 2019, appellant filed a complaint against Quality Loan Service Corporation for slander of title, deprivation of property without due process in violation of the Fourteenth Amendment, and submitting a false document for recording in a public office in violation of Penal Code section 115. In August 2019, appellant filed a first amended complaint, which is the operative pleading in this appeal.

The first amended complaint listed the causes of action against Quality Loan Service Corporation as wrongful foreclosure, submitting a false document to be recorded in violation of Penal Code section 115, and slander of title. Appellant alleged "he is a victim of Wrongful Foreclosure … because the home was sold for $158,500 [and he] never received any money." He also alleged he possessed a full reconveyance from Freedom Mortgage Corporation and "[t]hat document alone shows by fact [he] did not default on his purchase of a home and the crimes that involve wrongful foreclosure were committed against [him] and his children." Appellant alleged Quality Loan Service Corporation submitted false deeds to the County Recorder's Office and "his full reconveyance shows his mortgage loan account was paid in full, making every document in favor of the defendant false." Appellant supported his allegations in his first amended

6.

complaint by attaching the 11 recorded documents described earlier in this opinion and the mortgage statement dated February 18, 2016.

Quality Loan Service Corporation filed a demurrer to the first amended complaint, contending appellant had failed to state facts sufficient to constitute a cause of action against it and appellant's entire pleading was uncertain for purposes of Code of Civil Procedure section 430.10, subdivision (f). Quality Loan Service Corporation argued the documents submitted by appellant demonstrated (1) the public auction of the Property occurred on January 21, 2016, (2) the sale proceeds were used to pay the loan secured by the Deed of Trust, and (3) appellant no longer held any interest in the Property by the time the full reconveyance was recorded. Quality Loan Service Corporation argued all of appellant's causes of action were based on the erroneous view that the 2016 reconveyance proved he satisfied his loan obligations. Quality Loan Service Corporation supported its demurrer with a request for judicial notice of most of the recorded documents attached to the first amended complaint.

Appellant filed an opposition to the demurrer. Appellant referred to paragraphs 19 and 20 of the Deed of Trust and stated he sought "the protection of The Security Agreement by clause completion wording and contractual deed definition."

At a hearing on October 22, 2019, the trial court adopted its tentative ruling to sustain the demurrer. The court's minute order (1) noted appellant's argument that the full reconveyance meant he no longer owed anything to the lender and the foreclosure was wrongful and (2) stated the reconveyance was recorded only after the nonjudicial foreclosure sale was completed.

In November 2019, appellant filed a motion to vacate the order sustaining the demurrer. Quality Loan Service Corporation opposed the motion. At a hearing on December 3, 2019, the court adopted its tentative ruling to deny the motion.

7.

On December 20, 2019, the trial court signed and filed a judgment of dismissal stating the entire case against Quality Loan Service Corporation was dismissed with prejudice. That same day, appellant filed a notice of appeal.

## DISCUSSION

I. DEMURRERS

A. <u>Pleading a Cause of Action</u>

Under California law, a complaint must contain "[a] statement of the facts constituting the cause of action, in ordinary and concise language." (Code Civ. Proc., § 425.10.) For purposes of making the required statement of facts, the term "cause of action" refers to the " 'right to obtain redress for a harm suffered.' " (*Hayes v. County of San Diego* (2013) 57 Cal.4th 622, 631.) The facts that must be written down in a complaint to properly allege a cause of action are referred to as the essential elements of the cause of action. The essential elements are determined by the substantive law that defines the cause of action—that is, defines the circumstance in which a plaintiff has a right to relief from a harm suffered. (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2020) ¶ 6:121, p. 6-36.)

B. <u>Elements of Wrongful Foreclosure Cause of Action</u>

Appellant's opening brief states he is challenging a wrongful foreclosure sale of his home and is seeking compensation for that wrongful sale in the amount of $158,500 plus damages. Our Supreme Court has recognized that "[a] beneficiary or trustee under a deed of trust who conducts an illegal, fraudulent or willfully oppressive sale of property may be liable to the borrower for wrongful foreclosure." (*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 929 (*Yvanova*).) Therefore, California law recognizes a cause or causes of action for wrongful foreclosure.

Here, we consider whether appellant has stated facts constituting a cause of action for wrongful foreclosure. Initially, we note the term "wrongful foreclosure" covers a

8.

wide range of wrongs because there are many ways in which acts done in connection with the foreclosure process might violate rights created by statute, the common law, or the loan documents. (See *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079, 1100, fn. 17 (*Glaski*) [claims a foreclosure is "wrongful" can be tort-based, statute-based and contract-based].) For instance, nonjudicial foreclosure "initiated by one with no authority to do so is wrongful for purposes of such an action." (*Yvanova*, *supra*, 62 Cal.4th at p. 929.) Another category of wrongful foreclosures involves *procedural irregularities* in a foreclosure sale conducted by the rightful trustee at the direction of the rightful beneficiary. Foreclosures in this category are *wrongful* because the manner in which the *foreclosure process* was conducted did not comply with the process established by California's statutory scheme or the agreement of the parties. (E.g., *Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 81, 92–94 [procedural irregularity alleged was the premature service of the notice of trustee's sale] (*Knapp*).) We distinguish between these two categories of wrongful foreclosure because the essential elements of a cause of action alleging the foreclosure was conducted or initiated by an unauthorized person are different from the essential elements of a cause of action alleging procedural irregularities in the way the foreclosure was conducted.[1]

Here, appellant does not contend the foreclosing trustee failed to follow the nonjudicial foreclosure procedures specified in the contract (i.e., the loan documents, which include the Deed of Trust) or statute. Instead, he alleged a substantive wrong— specifically, a foreclosure on the Property despite the fact that the full reconveyance and

[1] The essential elements of a cause of action for a wrongful nonjudicial foreclosure based on procedural irregularities are (1) procedural irregularities in the foreclosure process that caused the sale of real property pursuant to the power of sale in the deed of trust to be illegal, fraudulent or willfully oppressive; (2) prejudice or harm to the party attacking the foreclosure sale; and (3) in cases where the borrower challenges the sale, the borrower tendered the amount of the secured indebtedness or was excused from tendering. (*Sciarratta v. U.S. Bank National Assn.* (2016) 247 Cal.App.4th 552, 561-562 (*Sciarratta*); see *Knapp*, *supra*, 123 Cal.App.4th at p. 86, fn. 4.)

mortgage statement showed his loan account was paid in full. Appellant's claim that the foreclosure was not authorized is the equivalent of a claim that Quality Loan Service Corporation failed to follow the terms of the Deed of Trust that defined the circumstances in which a foreclosure could be held by conducting a foreclosure sale even though his loan had been paid in full. Thus, appellant's claim of lack of authority is based on a failure to follow the terms of contract—that is, breached the contract.

A plaintiff must plead the following elements to state a cause of action for breach of contract: (1) the existence of the contract, (2) the plaintiff's performance or excuse for nonperformance, (3) the defendant's breach of a contract term, and (4) resulting damages to the plaintiff. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821; see CACI No. 303 [breach of contract—essential elements].) The first element—the existence of a contract—requires: "1. Parties capable of contracting; [¶] 2. Their consent; [¶] 3. A lawful object; and, [¶] 4. A sufficient cause or consideration." (Civ. Code, § 1550; see CACI No. 302 [contract formation].) "The consent of the parties to a contract must be: [¶] 1. Free; [¶] 2. Mutual; and, [¶] 3. Communicated by each to the other." (Civ. Code, § 1565.)

Here, plaintiff has properly alleged the existence of a contract—specifically, the Deed of Trust—and included a copy of that contract as an exhibit to his pleading. He also has alleged he was damaged by the loss of the Property. Consequently, we consider whether appellant has properly pleaded the other two elements—namely, that (1) he performed his obligations under the contract, or is excused from performing them, and (2) Quality Loan Service Corporation breached a term of the contract. Prior to discussing those two elements, we set forth the legal standards that govern general demurrers and the appellate review of an order sustaining a demurrer.

C.      General Demurrers

1.      *Stating a Cause of Action under Any Legal Theory*

When a complaint "does not state facts sufficient to constitute a cause of action," a defendant may raise that objection by filing a demurrer. (Code Civ. Proc., § 430.10, subd. (e).) A court considering a demurrer ordinarily gives the complaint a reasonable interpretation, reading it as a whole and its parts in their context. (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865 (*Dinuba*).) Determining whether a pleading alleges facts sufficient to constitute a cause of action is a question of law. (*Neilson v. City of California City* (2005) 133 Cal.App.4th 1296, 1305 (*Neilson*).)

2.      *Standard of Appellate Review*

Appellate courts independently review an order sustaining a general demurrer and make an independent determination of whether the pleading alleges facts sufficient to state a cause of action under *any* legal theory. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.) The "appellate court assumes the truth of (1) all facts properly pleaded by the plaintiff, (2) all facts contained in exhibits to the complaint, (3) all facts that are properly the subject of judicial notice, and (4) all facts that reasonably may be inferred from the foregoing facts." (*Neilson*, *supra*, 133 Cal.App.4th at p. 1305.) "The reviewing court does not assume the truth of contentions, deductions or conclusions of law." (*Ibid.*)

Appellant has the burden of demonstrating the trial court committed error in sustaining the demurrer. (*Smith v. County of Kern* (1993) 20 Cal.App.4th 1826, 1829–1830.) Appellate courts affirm a judgment of dismissal if it is correct on any ground stated in the demurrer, independent of the trial court's stated reasons. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.)

Besides addressing the sufficiency of the allegations stated in the complaint, an appellate court also considers whether the plaintiff has shown there is a reasonable possibility any defect identified by the defendant can be cured by amendment. (*Blank v.*

11.

*Kirwan* (1985) 39 Cal.3d 311, 318.)  The burden of demonstrating a reasonable possibility of cure is squarely on the plaintiff.  (*Ibid*.)

II.     ALLEGATIONS DO NOT SHOW A WRONG WAS COMMITTED

     A.     <u>Appellant's Performance of His Contractual Obligations</u>

Appellant signed the Deed of Trust to secure a loan obtained from First Mortgage Corporation.  The Deed of Trust states it secures to the lender the repayment of the debt and the performance of the borrowers' covenants and agreements under the Deed of Trust and the note.  Appellant's first amended complaint does not allege that (1) he performed his obligation to make the monthly payments due under the note, (2) the notice of default was inaccurate because his payments were up-to-date when the notice of default was recorded, or (3) he had cured the default under the note before the nonjudicial foreclosure sale was conducted.  Furthermore, appellant has not demonstrated on appeal that he could amend his pleading to allege he performed his contractual obligations or was excused from performing them.

Appellant's claim that the loan was paid off is based on the allegations that (1) he obtained a full reconveyance and (2) the mortgage statement dated February 18, 2016, shows that his loan was paid off in the prior month and, as a result, he owes nothing under his loan.  However, the deed upon trustee's sale states $157,940.91 was the amount of the unpaid debt together with costs at the time of the nonjudicial foreclosure sale conducted on January 21, 2016.  It also identifies the amount paid by the purchasers at the trustee's sale as $158,500.  The mortgage statement lists the loan's payoff date as January 25, 2016.  When the trustee's deed upon sale and the mortgage statement are read together, the only reasonable interpretation is that the proceeds from the foreclosure sale were used to pay the debt secured by the Deed of Trust.

Consequently, appellant has not shown he alleged (or could allege if granted leave) that he performed his obligations under the note and Deed of Trust.  Thus, he has

not demonstrated he could allege an essential element of a wrongful foreclosure claim based on a breach of his contract with the lender and trustee.

B.     Defendant's Breach of a Contractual or Statutory Obligation

The Deed of Trust gave the trustee (which includes Quality Loan Service Corporation as a substituted trustee) the power to sell the Property in a nonjudicial foreclosure sale if the loan was not repaid.  The notice of default, the notice of trustee's sale, and the deed upon trustee's sale all show that the debt secured by the Deed of Trust had not been paid.  Because the debt remained in default, Quality Loan Service Corporation had the right to conduct a nonjudicial foreclosure sale under the terms of the Deed of Trust and applicable California statute.

The allegations made by appellant do not show how Quality Loan Service Corporation breached a contractual obligation or statutory requirement when it conducted the foreclosure sale on January 21, 2016.  Therefore, appellant has not demonstrated he could allege an essential element of a wrongful foreclosure claim based on either a breach of his contract with the lender and trustee or a violation of statute.

C.     Legal Effect of the Full Reconveyance

Many of appellant's arguments refer to the full reconveyance recorded in the official records of Tulare County on February 17, 2016, as document number 2016-0008560.  Accordingly, we provide a brief overview of the law governing reconveyances.

1.     *Basic Legal Principles*

Civil Code section 2941 establishes deadlines and procedures for the reconveyance of a lien after a mortgage has been "satisfied."  (*Bank of New York Mellon v. Citibank, N.A.* (2017) 8 Cal.App.5th 935, 945.)  It also provides for damages and a penalty when the statutory requirements are not met.  (*Ibid.*)

> "**Reconveyance defined**.  A reconveyance is a deed by the trustee of a deed
> of trust that reconveys the trustee's title to the trustor or to another person
> legally entitled to it.  [(Civ. Code, § 2941, subd. (b).)]  Reconveyance is

13.

accomplished by the beneficiary executing a request for reconveyance. When the trustee receives the request, the trustee executes and records a deed of reconveyance transferring the security interest *to the current owner of the property*. [(Civ. Code, § 2941.)] On recordation, the lien is extinguished. However, between the parties, and as to all subsequent purchasers or encumbrancers with notice, a reconveyance is only prima facie evidence that the lien has been discharged. Conversely, when the obligation secured by the deed of trust is satisfied, but it has not been reconveyed, the lien is extinguished as between the parties [(Civ. Code, § 2941)], but the beneficiary has the legal obligation to reconvey in order to remove the cloud on title.

"[¶] … [¶]

"**Trustor's right to receive reconveyance on payment of the debt**. When a secured obligation has been paid and satisfied, the lien is discharged and the trustor or mortgagor has the right, on demand, to receive a reconveyance of the trust deed or a certificate of discharge of the mortgage and a return of the promissory note marked 'paid.'

"[¶]

"**Trustee's duty to reconvey**. On receipt of a request for reconveyance from the beneficiary, the trustee of the deed of trust has a duty to reconvey the lien of the deed of trust and has no duty to investigate the status of the secured debts or verify that they have been paid before reconveying the lien. The trustee must reconvey the lien of the deed of trust, and is not obligated (or permitted) to verify that the debt has in fact been paid.

"**No duty to reconvey if the obligations are not fully satisfied**. The beneficiary only has a duty to deliver a request for reconveyance to the trustee when the secured obligation is fully satisfied. There is no duty to initiate procedures for reconveyance where the obligation secured by the deed of trust has only been partially satisfied." (5 Miller & Starr, Cal. Real Estate (4th ed. 2019), Deeds of Trust and Mortgages, § 13:140, pp. 13-535 to 13-537, footnotes omitted and italics added (Miller & Starr).)

### 2. *Interpreting the Full Reconveyance*

The full reconveyance states that Freedom Mortgage Corporation, as the present trustee under the Deed of Trust, "does hereby reconvey to the person or persons legally entitled thereto, without warranty, all the estate, title and interest acquired by Trustee under said Deed of Trust." This language presents two questions of interpretation. First,

who is the person "legally entitled" to reconveyance.  Second, what "estate, title and interest [was] acquired by Trustee under said Deed of Trust" and, thus, was transferred by the full reconveyance.

Appellant interprets the full reconveyance as transferring ownership interests in the Property to him, thus implying that he is the person "legally entitled" to the reconveyance.  He supports his claim to the Property by referring to (1) the original grant deed that lists him as an owner, (2) the gift grant deed in which Molina transferred her interest in the Property to him, and (3) the mortgage statement from Freedom Mortgage Corporation indicating nothing is owed on his loan.

The statute refers to the delivery of the reconveyance instrument to the "trustor or successor in interest" or "to the trustor or the successor in interest."  (Civ. Code, § 2941, subd. (b)(1)(B)(i), (ii).)  The statute also identifies the persons authorized to request a reconveyance if the trustee fails to record one within 60 days of satisfaction of the obligation as the "trustor or trustor's heirs, successor in interest, agent or assignee."  (Civ. Code, § 2941, subd. (b)(2).)  These statutory references to the trustor or the successor in interest[2] appear to have been interpreted in Miller & Starr's description of the reconveyance as "transferring the security interest *to the current owner of the property*."  (Miller & Starr, *supra*, § 13:140, p. 13-535.)  In other words, Miller & Starr have identified the trustor or the trustor's successor in interest as the current owner of the property.  Accordingly, we interpret the reconveyance's reference to the person "legally entitled thereto" to mean the trustor's successor in interest.  If there is no successor in interest, then the trustor is the person legally entitled to the reconveyance.

---

[2] Black's Law Dictionary (8th ed. 2004) contains the following definition of "successor in interest":  "One who follows another in ownership or control of property.  A successor in interest retains the same rights as the original owner, with no change in substance."  (*Id*. at p. 1473.)

Our next step is to apply this interpretation to the facts of this case. That step requires a determination of whether the trustor (i.e., appellant) has a successor in interest. The answer to this question is straightforward because the documents recorded during the foreclosure process plainly show appellant had a successor in interest. In particular, the trustee's deed upon sale shows the purchasers of the Property at the foreclosure sale were appellant's successors in interest. Consequently, those purchasers or their successors in interest (not appellant) are the persons legally entitled to the reconveyance.

The second question of interpretation is whether, assuming appellant was the person legally entitled to the reconveyance, that document transferred anything to him. Stated another way, what rights, title and interests in the Property were held by the trustee when it executed and recorded the full reconveyance? To answer this question, we refer to an opinion that describes the legal impact of a nonjudicial foreclosure sale and the transfer of rights put into effect by the trustee's deed upon sale.

"After a nonjudicial foreclosure sale, the foreclosing trustee issues a trustee's deed upon sale. (See [Civ. Code,] §§ 2924g [conduct of sale], 2924 [finality of sale].) The trustee's deed upon sale conveys to the purchaser the borrower-trustors' interest as of the date the deed of trust granted by the borrower-trustor was recorded. [Citation.] Thus, the purchaser's title is free and clear of all rights of the trustor or anyone claiming under or through the trustor .…" (*Zieve, Brodnax & Steele, LLP v. Dhindsa* (2020) 49 Cal.App.5th 27, 36.) Thus, when a trustee under a deed of trust conducts a nonjudicial foreclosure, the foreclosure sale extinguishes all rights and interests to the real property of the borrower-trustors. (*Ibid.*)

This conclusion is consistent with the wording of the trustee's deed upon sale, which stated Quality Loan Service Corporation, as trustee, granted and conveyed to the purchasers "all right, title and interest conveyed to and now held by it as Trustee under the Deed of Trust in and to the [P]roperty." This language unambiguously shows the trustee transferred every right or interest it held to the purchasers.

16.

Consequently, when the full reconveyance was executed and recorded, the trustee no longer held any ownership interest in the Property to return to appellant. Instead, all the trustee's rights to the Property had been transferred to the purchasers at the foreclosure sale. Thus, there was nothing left for appellant to receive under the full reconveyance.

To summarize, we conclude (1) the full reconveyance does not establish appellant as the owner of any rights or interest in the Property and (2) the other documents in the record demonstrate the purchasers at the foreclosure sale own the Property.

Accordingly, the full reconveyance does not support appellant's arguments that the foreclosure was wrongful or unauthorized. Furthermore, it does not support his claim that he retains any title to the Property. Because appellant is not the owner, he may not maintain a cause of action against Quality Loan Service Corporation for slander of title. "The elements of a cause of action for slander of title are '(1) a publication, (2) which is without privilege or justification, (3) which is false, and (4) which causes direct and immediate pecuniary loss.' " (*Alpha & Omega Development, LP v. Whillock Contracting, Inc.* (2011) 200 Cal.App.4th 656, 664, italics omitted.) Here, appellant cannot allege Quality Loan Service Corporation published or recorded a document that was false or that he was damaged.

Therefore, we conclude the trial court properly sustained the demurrer. Furthermore, it properly denied leave to amend because appellant has not demonstrated he could cure the defects in his allegations by amending.

## DISPOSITION

The judgment is affirmed. Respondent shall recover its costs on appeal.

17.