Filed 8/24/21  Slosar v. Pristine Surgery Center CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIFTH APPELLATE DISTRICT

| | |
|---|---|
| BRIAN SLOSAR,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>PRISTINE SURGERY CENTER, INC. et al.,<br><br>Defendants and Respondents. | F078687<br><br>(Super. Ct. No. 16CECG02347)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Rosemary T. McGuire, Judge.

Accident, Injury and Medical Malpractice Attorneys of California and Daniel L. Carter, for Plaintiff and Appellant.

McCormick, Barstow, Sheppard, Wayte & Carruth, Scott M. Reddie and Daniel L. Wainwright, for Defendants and Respondents.

-ooOoo-

Appellant Brian Slosar (Slosar)[1] sued respondents Pristine Surgery Center, Inc. and Prahalad B. Jajodia, M.D., (collectively, Pristine) for general negligence (viz., medical malpractice) in connection with a colonoscopy performed on Slosar by Pristine. Pristine filed a motion for summary judgment, or in the alternative, summary adjudication (MSJ). Slosar filed ex parte applications to continue the MSJ on several grounds, including to conduct discovery Slosar contended was needed to oppose the MSJ, as well as an alleged attorney-client conflict of interest necessitating a substitution of attorney. The trial court denied Slosar's ex parte applications, and granted Pristine's MSJ. Slosar now appeals from those rulings. Concluding both that the trial court did not abuse its discretion in denying Slosar's ex parte applications and that the trial court's granting of Pristine's MSJ was correct, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On or about May 19, 2015, Pristine performed a colonoscopy on Slosar. Slosar alleged he suffered an intestinal perforation during the procedure, which resulted in leakage of fluid into his abdomen, requiring additional surgeries and causing ongoing pain, discomfort, and disability.

On July 21, 2016, Slosar filed a complaint for general (medical) negligence against Pristine.

Pristine propounded written discovery as part of its defense to Slosar's complaint, including special interrogatories that sought the identities of each physician or health care provider who had informed Slosar that Pristine fell below the degree of skill and care required of a healthcare provider practicing under the same or similar circumstances as

---

[1]  Slosar's then wife, Corrina Slosar, was a coplaintiff in the underlying action, having asserted a loss of consortium claim based on the same nucleus of operative facts and same legal theory as Slosar's medical malpractice cause of action. It does not appear, however, that Corrina Slosar joins her former husband in pursuing this appeal. Consequently, references to Slosar will pertain solely to Brian Slosar.

those involved in Slosar's colonoscopy. In his July 21, 2017 responses to Pristine's special interrogatories, set one, Slosar indicated that at that time no doctors had been deposed or questioned in connection with the case, and that Slosar consequently had no names to provide Pristine in response to Pristine's request.

On August 10, 2018, more than a year later, and more than two years after Slosar filed his complaint, Pristine filed its MSJ, which included a separate statement of undisputed material facts, supporting declarations with exhibits, and a statement of evidence with additional exhibits. Pristine retained Dr. John P. Cello as a medical standard of care expert who rendered an opinion in support of Pristine's MSJ. The MSJ's primary contention was that Slosar's cause of action for "general negligence" had no merit because Dr. Cello's expert testimony showed the care and treatment rendered to Slosar by Pristine was at all times within the applicable standard of care, and that Slosar could adduce no evidence to the contrary.

Slosar filed no opposition to Pristine's MSJ, but about two months later, on October 16, 2018, Slosar's counsel indicated to the trial court that he would no longer be Slosar's attorney of record, and would be signing a substitution of attorney that day.[2]

On October 17, 2018, Slosar filed an ex parte application for an order to continue the hearing on Pristine's MSJ and to continue the scheduled trial, which application included a memorandum of points and authorities. Slosar's ex parte application indicated that a conflict of interest had arisen between Slosar and his counsel, which allegedly prevented the timely completion of Slosar's opposition to Pristine's MSJ. Slosar's counsel also claimed in his supporting declaration to have sustained "calendaring limitations," staffing problems, "limits in time," and personal and familial health issues

---

[2] Although Slosar's counsel substituted out shortly after this date, he was the counsel referred to in the documents regarding the MSJ, which are relevant to the issues in this appeal. Thus, our continuing references to Slosar's counsel are to that original counsel.

3.

that likewise prevented the timely completion of both discovery and Slosar's opposition to Pristine's MSJ.

On October 18, 2018, an in camera hearing was held between the trial court and Slosar's counsel. On October 18, 2018, and October 19, 2018, Slosar filed substitutions of attorney.

On October 23, 2018, following a hearing, the trial court denied Slosar's ex parte application to continue the MSJ.

On October 31, 2018, Slosar filed declarations of several of Slosar's counsel's own employees in opposition to Pristine's MSJ, as well as a "continued declaration" of his counsel himself, and renewed his ex parte application to continue the MSJ, and to continue the trial. The gravamen of Slosar's argument in support of his renewed effort to continue Pristine's MSJ was that facts essential to justify opposition to the MSJ might exist, but could not, for reasons stated, be presented at the scheduled hearing date of the MSJ. Specifically, Slosar indicated he anticipated that the deposition of Dr. Jajodia would create triable issues of material fact. Slosar's renewed ex parte application also reiterated the same "calendaring limitations," staffing problems, "limits in time," and personal and familial health issues that he previously claimed prevented the timely completion of both discovery and opposition to Pristine's MSJ. Slosar again raised the argument that due to the conflict of interest that had arisen between Slosar and his counsel, the trial court had good cause to grant a continuance of the MSJ and the trial. Additionally, Slosar claimed excusable neglect required the trial court to consider his late-filed moving papers.

On October 31, 2018, following a hearing, the trial court again denied Slosar's ex parte application to continue Pristine's MSJ. The trial court then granted that MSJ.

On November 2, 2018, the trial court entered its judgment in favor of Pristine.

On January 4, 2019, Slosar filed his notice of appeal.

4.

## DISCUSSION

Slosar contends that the trial court abused its discretion when it denied his ex parte application for a continuance of Pristine's MSJ and his request to file a late opposition to Pristine's MSJ, and erred as a matter of law in granting Pristine's MSJ.

## I.     Summary Judgment

Summary judgment is a mechanism that cuts through the parties' pleadings and allows the court to determine whether a trial is necessary to resolve their dispute. (Code Civ. Proc.,[3] § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).) An MSJ shall be granted where there is no triable issue of any material fact and the moving party is entitled to judgment as a matter of law. (§ 437c, subd. (c); *Schachter v. Citigroup, Inc.* (2009) 47 Cal.4th 610, 618.) "A defendant moving for summary judgment meets its burden of showing that there is no merit to a cause of action if that party has shown that one or more elements of the cause of action cannot be established or that there is a complete defense to that cause of action." (*Blue Shield of California Life & Health Ins. Co. v. Superior Court* (2011) 192 Cal.App.4th 727, 732.) "If the defendant does so, the burden shifts back to the plaintiff to show that a triable issue of fact exists as to that cause of action or defense." (*Ibid.*) The plaintiff must produce admissible evidence to show that a triable issue of material fact exists in order to overcome a showing that one or more elements of the cause of action cannot be established. (§ 437c, subd. (p)(2); *Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 72.)

To mitigate summary judgment's harshness, section 437c, subdivision (h) virtually mandates the granting of continuance requests upon a good faith showing by affidavit

---

[3]     Subsequent statutory references are to the Code of Civil Procedure, unless otherwise specified.

that a continuance is needed to obtain facts essential to justify opposition to an MSJ.[4]
(*Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 100-101 (*Knapp*).) "[There is] little room for doubt that such continuances are to be liberally granted." (*Bahl v. Bank of America* (2001) 89 Cal.App.4th 389, 395.)

## II.    Analysis

### A.      *Denial of Slosar's Ex Parte Application for Continuance of MSJ*

We review the trial court's denial of an application for continuance under section 437c, subdivision (h) for abuse of discretion. (*Knapp*, *supra*, 123 Cal.App.4th at p. 100.) Here, even employing the standard under which those continuance requests are liberally granted, we conclude that the trial court did not abuse its discretion by denying Slosar's request in this instance. We reach this conclusion for several reasons.

First, Slosar's declaration in support of the application for continuance did not contain the requisite indication in good faith of the essential facts that Slosar believed existed to oppose Pristine's MSJ and the reasons those facts could not be presented in opposition to the motion. Slosar's declaration, in fact, did not identify any specific facts essential to oppose the MSJ. Instead, Slosar's declaration pointed to (1) an alleged conflict that had developed between Slosar and his counsel, and (2) counsel's workload and personal difficulties.[5] Slosar's memorandum of points and authorities in support of

---

**4**      Section 437c, subdivision (h) reads: "If it appears from the affidavit submitted in opposition to a motion for summary judgment or summary adjudication, or both, that facts essential to justify opposition may exist but cannot, for reasons stated, be presented, the court shall deny the motion, order a continuance to permit affidavits to be obtained or discovery to be had, or make any other order as may be just. The application to continue the motion to obtain necessary discovery may also be made by ex parte motion at any time on or before the date the opposition response to the motion is due."

**5**      Slosar's opening brief asserts that the declarations filed in support of Slosar's ex parte application for continuance indicated that Slosar's counsel "had been diagnosed with an aggressive prostate cancer ahead of the [MSJ] hearing." A review of both the October 17, 2018 declaration and the October 31, 2018 "continued declaration" of Slosar's counsel, however, fails to reveal any such statement or indication. The only

his ex parte application did briefly reference Slosar's "continued treatment of care and professional services" in the immediate five days following Slosar's colonoscopy, and expressed a desire to take the depositions of Drs. Jajodia and Cello. However, a memorandum of points and authorities is not a declaration or affidavit, and Slosar's declaration in support of his application still failed to satisfy the requirement that it show "facts essential to justify opposition may exist." (§ 437c, subd. (h); *Roth v. Rhodes* (1994) 25 Cal.App.4th 530, 548.)

All of the declarations submitted by Slosar emphasized the conflict of interest that allegedly arose between Slosar and his counsel as a basis to grant the continuance. The trial court, however, not only considered the contents of the supporting declarations in this regard before ruling on the ex parte application, it also afforded Slosar's counsel an in camera hearing to discuss the issue in detail. While understandably no transcript of that in camera hearing exists, apparently nothing disclosed or discussed during that hearing led the trial court to conclude that, whatever issues befell the relationship between Slosar and his counsel, they warranted a continuance of Pristine's MSJ (though Slosar's counsel immediately thereafter filed a substitution of attorney). " 'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) Slosar has presented no facts or arguments on appeal sufficient to disturb the considered judgment of the trial court with respect to its denial of Slosar's ex parte application following the in camera hearing.

---

medical issue specific to Slosar's counsel that is mentioned in the supporting declarations is a case of shingles.

The declarations offered by Slosar in support of the ex parte application for continuance neither explained how outstanding discovery was related to issues raised by Pristine's MSJ, nor showed that a continuance was needed to obtain facts essential to justify opposition to the MSJ. Instead, the declarations merely catalogued the series of unfortunate events that had plagued Slosar's counsel.

Second, Slosar's application for a continuance presented "no justification for the failure to have commenced the use of appropriate discovery tools at an earlier date." (*FSR Brokerage, Inc. v. Superior Court* (1995) 35 Cal.App.4th 69, 76.) Slosar did not explain any failure to discover facts relating to the MSJ. Slosar had over two years within which to develop the factual and expert opinion basis of his medical malpractice claim against Pristine, but completely failed to do so. Slosar never adequately explained his lack of a medical expert to opine in support of his medical malpractice claim against Pristine. If Pristine's failure to meet the relevant standard of care was as patent as Slosar's charging allegations asserted, it should have been a relatively easy task for Slosar to procure a qualified expert to opine as to the same. Slosar, however, did not do so, and provided no explanation or justification for such failure. While perhaps not determinative (see *Bahl v. Bank of America*, *supra*, 89 Cal.App.4th at pp. 397-398), Slosar's lack of diligence here was an additional factor relevant to the trial court's exercise of discretion in its refusal to continue the summary judgment hearing. (See *FSR Brokerage, Inc.*, *supra*, 35 Cal.App.4th at p. 76; *A & B Painting & Drywall, Inc. v. Superior Court* (1994) 25 Cal.App.4th 349, 356-357.)

Slosar's reliance on *Mary Morgan, Inc. v. Melzark* (1996) 49 Cal.App.4th 765 (*Melzark*) in this regard is misplaced. *Melzark* does indeed articulate the proposition that while a plaintiff cannot defeat a well-founded summary judgment motion without setting forth specific facts controverting the motion, "[a]n exception is made for an opposing party who has not had an opportunity to marshal the evidence, and a summary judgment motion will be denied or continued if the opposing party declares that 'facts essential to

justify opposition may exist but cannot, for reasons stated, then be presented.' " (*Id.* at pp. 770-771.) However, in this instance Slosar had numerous opportunities to marshal the requisite evidence and specific facts to controvert Pristine's MSJ. In addition to the more than two years that the litigation had been active at the time of the filing of Pristine's MSJ, there was also the more than one year between the subject colonoscopy and the filing of Slosar's complaint, and the more than two months following the filing of Pristine's MSJ during which the expert opinion(s) necessary to carry Slosar's burden of proof on his medical malpractice claim could and should have been obtained. Slosar took advantage of none of these opportunities to marshal the requisite evidence, and offered the trial court no real explanation for his failure to do so. Nor did Slosar at any prior point during the two-year litigation of this matter prior to the filing of Pristine's MSJ seek to obtain a trial continuance (either by stipulation or via court order) as a means of addressing the scheduling and workload issues that allegedly plagued Slosar's counsel. Slosar's own inactivity did not meet the standard articulated by *Melzark*.

Likewise, Slosar's reliance on *Frazee v. Seely* (2002) 95 Cal.App.4th 627 (*Frazee*) is unavailing. While the *Frazee* court did hold that it was an abuse of discretion to refuse to grant a continuance when Frazee's counsel explained in a declaration that he had not been able to complete extensive discovery due to logistical and scheduling problems, the facts and circumstances of *Frazee* stand in contrast to the facts and circumstances of this case. Slosar, unlike Frazee, had not even undertaken meaningful discovery, let alone reached a point of near completion of discovery, by the time of the MSJ. In Slosar's case, unlike Frazee's, the arguments raised in favor of Slosar's application for a continuance did not center around the need for completion of the transcription of depositions already taken, or the taking of depositions already calendared at the time of the MSJ, or the receipt of responses to pending written discovery requests. To the contrary, Slosar's declaration in support of his ex parte application for a continuance did not indicate any pending discovery efforts on Slosar's part, but rather ruminated on the

9.

possibility of as yet unattempted discovery options. Frazee was in the middle of important discovery when the defendants' MSJ was filed; by contrast, Slosar had not ever undertaken important (or even basic) discovery when Pristine's MSJ was filed. Indeed, there is no evidence in the record before us that Slosar had engaged in any written discovery, taken any depositions, or engaged any medical experts at the time of the filing of Pristine's MSJ. Likewise, while *Frazee* held that section 437c, subdivision (h) allows for further discovery to properly oppose a motion, regardless of discovery conducted for trial, in Slosar's case more than two months had passed between the filing of Pristine's MSJ and the filing of Slosar's ex parte application for a continuance of the MSJ (Frazee had less than one month). There is no evidence that Slosar even attempted to undertake any discovery specific to oppose Pristine's MSJ during that period of time.

While Slosar's counsel apparently was experiencing personal and professional turmoil during the pendency of Pristine's MSJ, there is no evidence that he either attempted to at least plan discovery efforts during that pendency, or filed an application for a continuance prior to the date an opposition to the MSJ was due (i.e., at the earliest possible juncture). Although the declarations of counsel in support of the application for continuance emphasized the press of other business as an impediment to developing an opposition to Pristine's MSJ, they do not really indicate how such other business was unusually or unforeseeably pressing during the specific two-month period of time after the MSJ was filed.

Section 437c makes no mention of a need to show diligence, but an utter lack of effort and meaningful opposition cannot be overlooked, and may be a factor justifying a court's refusal to grant a continuance under section 437c, subdivision (h). (*Cooksey v. Alexakis* (2004) 123 Cal.App.4th 246, 255-257.) Notwithstanding that the Legislature has provided for the fairly lenient granting of continuances to oppose summary judgment motions, under these facts the trial court did not abuse its discretion by refusing to grant Slosar's request in this regard.

### B. Granting of Pristine's MSJ

Having concluded that the trial court did not err in refusing to grant Slosar a continuance, we turn to the question of whether it thereafter properly granted Pristine's MSJ.

Courts usually follow a three-pronged analysis regarding their consideration of MSJs. (*Lease & Rental Management Corp. v. Arrowhead Central Credit Union* (2005) 126 Cal.App.4th 1052, 1057-1058.) The first prong involves identifying the material issues via the pleadings, the second prong involves determining whether the moving party has established facts negating the opposing party's claims, and the third prong is determining whether the opposing party then demonstrates the existence of a triable issue of material fact. (*Ibid.*) To obtain summary judgment, all a defendant need do is show that the plaintiff cannot establish at least one element of the cause(s) of action; he need not conclusively negate all such elements. (*Aguilar*, *supra*, 25 Cal.4th at p. 853; *Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.) A defendant need only negate the plaintiff's theories of liability as alleged in the complaint—"that is, a moving party need not refute liability on some theoretical possibility not included in the pleadings." (*Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 493.)

A plaintiff may not rely on the bare denials contained in its pleadings or on mere speculation when opposing an MSJ; rather, the plaintiff must show the existence of a dispute of material fact with competent evidence. (*Luders v. Pummer* (1957) 152 Cal.App.2d 276, 278.) If a defendant is entitled to summary judgment based upon its proof, the plaintiff can only overcome the summary judgment by introducing its own competent evidence to create a triable issue of material fact. (*Ibid.*)

We review the grant of summary judgment, a pure question of law, de novo. (*Aguilar*, *supra*, 25 Cal.4th at p. 860; *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334; *Bostean v. Los Angeles Unified School Dist.* (1998) 63 Cal.App.4th 95, 107-108.) In doing so, we independently review the record that was before the trial court, and accept

as undisputed those portions of the moving party's evidence that are not contradicted by the opposing party's evidence. (*A-H Plating, Inc. v. American National Fire Ins. Co.* (1997) 57 Cal.App.4th 427, 433-434.) We conduct the same procedure employed by the trial court, which consists of an examination of (1) the pleadings to determine the elements of the claim for which relief is sought; (2) the summary judgment motion to determine if the movant has established facts justifying judgment in its favor; and (3) the opposition to the motion—assuming the movant has met its initial burden—to decide whether the opposing party has demonstrated the existence of a triable, material fact issue. (*Knapp*, *supra*, 123 Cal.App.4th at p. 84.)

Slosar's complaint plainly framed a medical malpractice claim based on the alleged perforation of his intestine by Pristine with the colonoscope that Pristine used to conduct Slosar's colonoscopy, and on the alleged post-operative actions (and inactions) of Pristine. " 'The elements of a cause of action for medical malpractice are: (1) a duty to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a breach of the duty; (3) a proximate causal connection between the negligent conduct and the injury; and (4) resulting loss or damage.' " (*Lattimore v. Dickey* (2015) 239 Cal.App.4th 959, 968.)

The first element addressing the standard of care "is the key issue in a malpractice action and can only be proved by expert testimony, unless the circumstances are such that the required conduct is within a layperson's common knowledge." (*Lattimore v. Dickey*, *supra*, 239 Cal.App.4th at p. 968.) "Both the standard of care and a defendant's breach must normally be established by expert testimony in a medical malpractice case." (*Avivi v. Centro Medico Urgente Medical Center* (2008) 159 Cal.App.4th 463, 467, fn. 1.)

Having identified Slosar's theories of malpractice, we proceed to the second prong of the summary judgment analysis and "exercise an independent review to determine if the defendant moving for summary judgment met its burden of establishing a complete defense or of negating each of the plaintiff's theories and establishing that the action was

without merit." (*Fisherman's Wharf Bay Cruise Corp. v. Superior Court* (2003) 114 Cal.App.4th 309, 320.)

Dr. Cello's declaration in support of Pristine's MSJ contained paragraph 10 that read: "I am of the opinion that the nurses and related staff at [Pristine] and Dr. Jajodia at all times complied with the applicable standard of care in all respects with regard to the care and treatment provided to Brian Slosar in May of 2015 as it pertains to the colonoscopy." (Unnecessary capitalization omitted.) Dr. Cello's declaration also contained paragraph 11 that read: "[I]t is my opinion that, to a degree of medical probability, no act, error or omission on the part of any [Pristine] personnel and/or Dr. Jajodia caused or contributed, or was a substantial factor, in causing the injuries sustained by [Slosar]." (Unnecessary capitalization omitted.)

In further paragraphs comprising his declaration, Dr. Cello stated Pristine's decision to recommend and then perform the colonoscopy on Slosar was in Dr. Cello's professional opinion medically indicated; Slosar provided informed consent to the colonoscopy; and there was nothing done by Pristine pre-operatively, intra-operatively, or post-operatively that was below the relevant standard of medical care.

In particular, Dr. Cello opined that Slosar's colonoscopy was performed by Pristine with no complications or any evidence of a breach in the standard of care, and that the post-procedure care, monitoring and assessments of Slosar by Pristine were "reasonable, appropriate and within the applicable standard of care." Dr. Cello's declaration noted that Slosar left Pristine's facilities on May 19, 2015, without any reported issues, problems or concerns related to the symptoms Slosar later reported experiencing. Observing that Slosar did not seek further medical care until May 21, 2015, Dr. Cello asserted that the finding of multiple diverticula in Slosar's intestinal tract at that time had nothing to do with the May 19, 2015 colonoscopy performed on Slosar by Pristine. Dr. Cello found the May 26, 2015 surgical pathology diagnosis of Slosar by William C. Pitts, M.D., of sigmoid colectomy, diverticulosis, diverticulitis, and focal

13.

diverticular rupture to be "extremely relevant" insofar as Dr. Cello concluded those findings had nothing to do with the May 19, 2015 colonoscopy. Dr. Cello found this significant because Slosar's diverticulosis with diverticulitis involving the sigmoid colon and focal diverticular rupture could not in Dr. Cello's opinion have been caused by the colonoscope Pristine used during Slosar's colonoscopy. According to Dr. Cello, such colonoscopes shut off at about "40 to 50 mm" of mercury in pressure, and Dr. Cello viewed the relevant literature as being "clear that you need 300 mm [of mercury in] pressure to blowout a diverticulum." Additionally, Dr. Cello regarded the ruptured diverticula Slosar had as "an extremely common cause of admission" to the hospital with left lower quadrant abdominal pain like that Slosar presented with on May 20 and 21, 2019, after his colonoscopy.

These opinions expressed by Dr. Cello objectively established facts negating Slosar's claim that Pristine's alleged general medical negligence was the proximate cause of Slosar's diverticulitis involving the sigmoid colon and focal diverticular rupture. Specifically, Pristine met its burden of showing that Slosar could not establish two essential elements of his negligence claim: breach of duty and causation of harm. Pristine thus satisfied the second prong of the MSJ analysis; the burden thereafter shifted to Slosar on the third prong of that analysis.

In response, Slosar provided no evidence demonstrating the existence of a triable issue of fact regarding breach or causation, failing to comply with the requirements of section 437c, subdivision (b)(3) for a separate statement of material facts opposing Pristine's MSJ. Slosar, simply put, did not meet his burden under the third analytical prong. Over the course of more than two years of litigation and discovery in the case, Slosar never obtained any expert opinion(s) to contradict those expressed by Dr. Cello. Thus, Dr. Cello's conclusions were completely unchallenged by Slosar (despite his bearing the ultimate burden of proof as the plaintiff in the litigation), and Pristine was

14.

consequently entitled to entry of judgment in its favor as a matter of law. It was therefore proper for the trial court to grant Pristine's MSJ on the merits.

Slosar's arguments that he had insufficient time to complete the discovery he deemed necessary to oppose Pristine's MSJ are unavailing, as they do not account for the 25-month period of time that elapsed before Pristine filed its MSJ. As noted, medical malpractice cases are particularly dependent upon expert testimony, of which Slosar never had any. In light of the fact that medical malpractice cases are inevitably "battles of the experts," Slosar's delinquency in this regard is inexplicable, and Slosar offers no explanation for it in his briefs on appeal, focusing instead on the two-month period of time between the filing of Pristine's MSJ and his own efforts to obtain new counsel and respond to the MSJ. Yet even in that regard Slosar offered the trial court no real explanation for his delinquency in conducting no discovery at all during that two-month period of time. In sum, there were no triable issues of material fact presented in opposition to Pristine's MSJ, and summary judgment was thus appropriate to dispose of the claims alleged in Slosar's complaint.

Although the trial court's order does not explicitly mention the general principle that, "in most instances," the immediate grant of summary judgment is too harsh a consequence when (as here) a plaintiff's pleadings have failed to comply with applicable requirements (*Collins v. Hertz Corp.* (2006) 144 Cal.App.4th 64, 74), it is nevertheless apparent from the record that the trial court—in the pleadings, hearings, and ex parte conference the trial court reviewed and engaged in—did reach the question of whether the circumstances of this case were different from "most instances" in a way that justified denying the opposing party an opportunity to file a proper opposition to an MSJ. This was not an instance of a plaintiff filing a deficient opposition to an MSJ; Slosar filed no meaningful opposition at all.

"No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself

15.

correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion." (*Davey v. Southern Pacific Co.* (1897) 116 Cal. 325, 329.) We must affirm the trial court's ruling if there is any basis in the record for doing so. (*Maryland Casualty Co. v. Reeder* (1990) 221 Cal.App.3d 961, 966-967.) We do so here.

## **DISPOSITION**

The judgment is affirmed. Each party shall bear its own costs on appeal.


SMITH, J.

WE CONCUR:


DETJEN, Acting P.J.


DESANTOS, J.

16.